Matilda Schneider, Appellant, *v.* The City of Rochester, Respondent.

1. Municipal Corporations — Public Improvement — Common Council of City of Rochester Cannot Arbitrarily Set Aside Report of Commissioners of Appraisal and Have a New Appraisal. Section 179 of the charter of the city of Rochester (L. 1880, ch. 14), providing that upon the filing of the report of commissioners of appraisal in a proceeding to take private property for a public improvement, "the common council shall assign a time for hearing objections to the confirmation thereof, and at the time assigned shall hear the allegations of all persons interested, and may take proof in relation thereto from time to time, and shall confirm the said report, or may set the same aside and refer the matter to the same or to new commissioners," implies that an investigation is to be had where the objections of persons interested are to be determined upon proof, and does not empower the common council to set aside the report and have a new commission appointed upon its own motion and without any proof or allegation other than the bare statements of one of its members and the city attorney that the award was excessive.

2. No Inference of Arbitrary Right to Successive Appraisals. It is not inferable that the legislature intended to authorize the common council to arbitrarily set aside the report of a commission and have a new commission appointed because it or some officer of the city might assert that the compensation was too great, or to confer upon it the right to have as many successive appraisals in the same proceeding as it thought advantageous to the city, and thus compel the property owner to defend as many proceedings for appraisal as it saw fit to order.

3. No Adequate Remedy at Law against Unauthorized Reappraisal. The fact that the charter (§ 183) gives a right of appeal to the Supreme Court to any person aggrieved by the report of the commission of appraisal, after its confirmation, does not constitute such an adequate remedy at law as prevents a property owner from invoking the aid of equity to secure his just rights by enjoining proceedings by the city for a new appraisal on the unauthorized setting aside of a report of commissioners of appraisal by the common council.

*Schneider* v. *City of Rochester*, 33 App. Div. 458, reversed.

(Argued June 15, 1899; decided October 3, 1899.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered October 14, 1898, affirming a judgment in favor of defendant entered upon a decision of the court dismissing the complaint on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Elbridge L. Adams* and *Waldo G. Morse* for appellant. The charter of the city of Rochester (§ 179), properly construed, does not empower the common council to set aside the report of commissioners of appraisal, except (1) when allegations are made against it by persons interested; or (2) when at the same time it is set aside the whole condemnation proceeding is abandoned. (Cooley on Const. Lim. [6th ed.] 231, 648; Lewis on Em. Dom. §§ 254, 341; Dillon on Mun. Corp. [4th ed.] §§ 604, 608; *C., R. I. & P. Ry. Co.* v. *City of Chicago,* 143 Ill. 641; *I. C. R. R. Co.* v. *City of Champaign,* 163 Ill. 524; *State ex rel.* v. *City of Keokuk,* 9 Iowa, 438; *City of St. Joseph* v. *Hamilton,* 30 Mo. 283.) If defendant's charter be construed so as to permit the common council to set aside the report of commissioners in condemnation proceedings whenever it pleases, and as many times as it pleases, against the protests of the landowner, then appellant contends that so much of the charter as authorizes such action is in contravention of the Constitution of the state of New York. (Const. N. Y. art. 1, § 6; *Taylor* v. *Porter,* 4 Hill, 140; *Pennoyer* v. *Neff,* 95 U. S. 714; *Matter of City of Buffalo,* 139 N. Y. 422; *M. N. Co.* v. *U. S.,* 148 U. S. 327; *Wynehamer* v. *People,* 13 N. Y. 395; *Embury* v. *Conner,* 3 N. Y. 511; Potter's Dwarris on Stat. 395; Dillon on Mun. Corp. § 619; 2 Kent's Com. 13; *Rogers* v. *Baumgarten,* 126 N. Y. 340; *People ex rel.* v. *Trustees, etc.,* 151 N. Y. 75; *Monroe Co.* v. *City of Rochester,* 154 N. Y. 570.) Defendant's charter is repugnant to article 14, section 1, of the Federal Constitution, which declares: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state * * * deny to any person within its jurisdiction the equal protection of the laws." (*Yick Wo* v. *Hopkins,* 118 U. S. 369; *Co. of San Mateo* v. *S. P. R. Co.,* 13 Fed. Rep. 732; *U. S.* v. *Harris,* 106 U. S. 629; *U. S.* v. *Cruikshank,* 92 U. S.

542 ; *Slaughter House Cases,* 16 Wall. 36 ; *Barbier* v. *Con-nolly,* 113 U. S. 27; *Soon Hing* v. *Crowley,* 113 U. S. 703 ; *Smythe* v. *Ames,* 169 U. S. 523 ; *Durkee* v. *Janesville,* 28 Wis. 464; *G., etc., R. Co.* v. *Ellis,* 165 U. S. 150.) It is no answer to the foregoing argument to say that the plaintiff is not deprived of her property until it is actually taken. The proposed proceeding on the part of defendant is a step in the process which if not interfered with would assuredly result in the deprivation. (*Forster* v. *Scott,* 136 N. Y. 577.)

*John F. Kinney* for respondent. Under section 179 of the charter of the city of Rochester the common council is possessed of ample power to set aside the report of commissioners of appraisal and to refer the matter to new commissioners. (Lewis on Em. Dom. § 255 ; *Bellona Company Case,* 3 Bland Ch. 442 ; *Jerome* v. *Ross,* 7 Johns. Ch. 315 ; *Trustees, etc.,* v. *Haas,* 42 Ohio St. 239 ; *Mutter of Livingston St.,* 82 N. Y. 621 ; *Schneider* v. *City of Rochester,* 90 Hun, 171; *Matter of Canal St.,* 11 Wend. 154; *Matter of Anthony St.,* 20 Wend. 618 ; *Matter of M. P. Ground,* 60 N. Y. 319 ; *People ex rel.* v. *Pres., etc., of Brooklyn,* 1 Wend. 318 ; *Corporation of N. Y.* v. *Mapes,* 6 Johns. Ch. 49.) Section 179 of the charter of the city of Rochester, if it confers upon the common council the power claimed, is free from any constitutional objection. (Const. N. Y. art. 1, § 6 ; *Clarke* v. *City of Rochester,* 24 Barb. 446 ; *People ex rel.* v. *Bd. Suprs.,* 17 N. Y. 235 ; *People ex rel.* v. *Albertson,* 55 N. Y. 50 ; *Backus* v. *F. S. U. Depot,* 169 U. S. 557 ; *People ex rel.* v. *Bd. Suprs.,* 70 N. Y. 228 ; *Davidson* v. *Bd. of Admrs.,* 96 U. S. 97 ; *Murray* v. *H. L. Co.,* 18 How. [U. S.] 272 ; *New Orleans* v. *Drake,* 60 Miss. 621 ; *Matter of Mayor, etc., of N. Y.,* 99 N. Y. 569 ; *B. & S. R. R. Co.* v. *Nesbit,* 10 How. [U. S.] 395.) Section 179 of the city charter is not repugnant to article 14, section 1, of the Federal Constitution. (*M. P. R. R. Co.* v. *Humes,* 115 U. S. 512 ; *M. P. R. R. Co.* v. *Mackie,* 127 U. S. 205 ; *Bowman* v. *Lewis,* 101 U. S. 22 ; *N. Y. & N. E. R. R. Co.* v. *Brewster,* 151 U. S. 555.) The

plaintiff has an adequate remedy at law for the relief sought in her complaint, and she should not be heard in a court of equity; therefore, appellant has mistaken her remedy, and the judgment of the court dismissing the complaint should be affirmed. (1 Beach on Injunc. 588, § 581; *Wolfe* v. *Burke*, 56 N. Y. 115; *Thomas* v. *M. M. P. Union*, 121 N. Y. 45; *McLaury* v. *Hart*, 121 N. Y. 636; *Heiser* v. *Mayor, etc.*, 104 N. Y. 68; *People* v. *Wasson*, 64 N. Y. 167; *People ex rel.* v. *Jones*, 112 N. Y. 597; *People ex rel.* v. *Haverstraw*, 137 N. Y. 88; *Matter of Fitch*, 147 N. Y. 334; *Schneider* v. *City of Rochester*, 90 Hun, 171; *Kip* v. *N. Y. & H. R. R. Co.*, 6 Hun, 24.)

MARTIN, J. The plaintiff is a resident of the city of Chicago and the owner of two lots known as numbers seven and eight of the Atwater and Andrews tract in the city of Rochester. On the 22nd day of August, 1893, the common council of that city passed an ordinance by which it determined to open a street, ninety feet in width, from Central avenue to Granger street, the west line of which should be the west line of lot number seven, and the east line of which should be the east line of lot number eight; that the territory necessary to be taken therefor consisted of the lots mentioned, and that the whole expense of such improvement should be assessed upon the portion of the third ward lying south of the north line of the New York Central and Hudson River railroad.

In pursuance of that ordinance, proceedings were instituted by the defendant to condemn and acquire the title to the plaintiff's lots under the provisions of its charter. Such proceedings were had that on the 18th of January, 1894, the County Court of Monroe county appointed three commissioners to appraise the damages the plaintiff would thereby sustain and the compensation she should receive therefor. The commissioners met, duly qualified, and, after inspecting the property to be taken, heard the proofs and allegations of all parties interested, made their report with the evidence taken by them, and the same was filed in the Monroe county

clerk's office and in the office of the clerk of the city of Rochester on the 28th day of March, 1894. By their report they fixed and appraised the damage of the plaintiff at the sum of $40,000.

On the 29th of March, 1894, the report of the commissioners was presented to the common council, which thereupon fixed the third day of the following April as the time for hearing objections to its confirmation. At a regular meeting held on that day, this report was taken up for action thereon. No allegations against its confirmation were made, except that the alderman who represented 'the ward in which the street was proposed to be opened, stated that in his opinion the award of damages was excessive and the value of the property did not exceed $20,000, and the assistant city attorney stated that in his opinion the award was excessive and the market value of the property did not exceed the sum of $15,000 or $16,000. No proof to sustain those allegations was taken by the common council, but it at once adopted a resolution setting aside the report of the commissioners, referred the matter to new commissioners to be appointed by the Monroe County Court, and directed the city attorney to make the necessary application for their appointment. At that meeting the plaintiff presented a written communication to the common council requesting that in case it set aside the report it should also repeal the ordinance for the opening of the street, and that no further proceedings should be taken to condemn the land in question, but that the opening of such street should be abandoned. This communication was received, filed and published. Upon its receipt the common council at once passed a further resolution requiring the city attorney to give notice to the plaintiff, and to others whom it might concern, that an application would be made to the Monroe County Court on May 7th, 1894, for the appointment of new commissioners to ascertain and appraise the compensation which the plaintiff was entitled to receive by reason of taking said lots for the opening of the proposed street.

This action was thereupon commenced to enjoin and

restrain the defendant from applying for the appointment of new commissioners, upon the ground that its charter gave it no such power; or, if it did, it was, to that extent, unconstitutional and invalid. No further proceedings have been taken under that resolution. Upon the trial the foregoing facts were admitted by the parties, and the court, after finding them, held that the action of the common council relating to the appointment of new commissioners and setting aside the award of the first commission was, in all respects, regular and legal, and that the defendant was entitled to a judgment dismissing the complaint, with costs. From that decision an appeal was taken to the Appellate Division in the fourth department, where the judgment of the Special Term was affirmed by a divided court.

The first and practically the only question relating to the merits of this controversy is whether, in the proceeding for the condemnation of the plaintiff's property, the common council of the defendant had authority under its charter to set aside the report of the first commission and authorize the city attorney to make application for the appointment of a new one. The defendant contends, and the courts below have held, that it possessed that power. It relies upon section 179 of the charter to sustain that conclusion. That section provides : "Upon the filing of such report the said common council shall assign a time for hearing objections to the confirmation thereof, and at the time assigned shall hear the allegations of all persons interested, and may take proof in relation thereto from time to time, and shall confirm the said report, or may set the same aside and refer the matter to the same or to new commissioners to be appointed by the said court as before, who shall, thereupon, proceed as hereinbefore provided. But the common council may set aside said report and abandon said improvement at any time before the final confirmation of the assessment roll hereafter mentioned." (L. 1880, ch. 14.) Thus, the precise point presented is whether upon the filing of the report the common council could set it aside and have a new commission appointed upon its own

motion and without any proof or allegation other than the bare statements of one of its members and the city attorney that the award was excessive.

The counsel for the respondent insists that this authority is expressly conferred by that section. If this contention is correct, the common council might set aside any number of reports that were made by commissioners to appraise the plaintiff's damages, upon the mere assertion of one of its members or officers that the award was excessive and thus compel her to defend as many proceedings for appraisal as it saw fit to order. We find no such authority in the section relied upon. We cannot believe that in adopting that provision it was the purpose of the legislature to authorize the common council to arbitrarily set aside the report of a commission and have a new commission appointed because it or some officer of the city might assert that the compensation was too great, or to confer upon it the right to have as many successive appraisals in the same proceeding as it thought advantageous to the city. The injustice of such a power is manifest. If that right existed, the common council might, where the value of the property involved was inconsiderable, compel the owner to expend its entire value in defense of his title and in seeking to obtain just compensation, and thus substantially confiscate his property.

Moreover, if this statute was to be thus construed, its constitutionality would be difficult to maintain. With our views of this case, however, we do. not regard it necessary to decide as to the constitutionality of such a statute. Therefore, as this court does not usually determine such questions, unless necessary to the decision of the case under consideration, the constitutionality of this provision, if construed as claimed by the respondent, will not be considered or determined.

But if it were to be assumed that under this statute the common council might, in a proper case, set aside an award because it was excessive, it by no means follows that it could do so without any proof of that fact, except the mere unverified statement of parties who were interested in the litigation.

It is to be observed that the statute provides that the common council shall assign a time for hearing objections to the confirmation of the report, and that at the time appointed it shall hear the allegations of persons interested, and may take proof in relation thereto. As was said by the late Mr. Justice FOLLETT, in his dissenting opinion in this case : " The word 'allegation' in legal parlance usually denotes the formal averments of the parties interested, setting forth the issue which they are prepared to prove. Mere allegations, unless undenied, not supported by evidence, are not usually a sufficient foundation for a judicial or a *quasi* judicial determination." We think it is obvious that this section, providing for allegations by interested parties and for a hearing and the taking of proof in relation thereto, clearly implies that an investigation is to be had where the objections of persons interested are to be determined upon proof which shall be offered for or against their validity.

The authority of a municipal corporation to take private property must be expressly conferred, and the power and manner of its exercise strictly pursued. " Since the power to condemn private property against the will of the owner is a stringent and extraordinary one, based upon public necessity or an urgent public policy, the rule requiring the power to be strictly construed, and the prescribed mode for its exercise strictly followed, is a just one, and should, within all reasonable limits, be inflexibly adhered to and applied." (Dillon on Municipal Corporations, § 604; *In re City of Buffalo,* 78 N. Y. 362; *People ex rel. Odle* v. *Kniskern,* 54 N. Y. 52; *Adams* v. *Saratoga & W. Railroad Co.,* 10 N. Y. 328; *People ex rel. Johnson* v. *Vil. of Whitney's Point,* 102 N. Y. 81 ; Cooley on Constitutional Limitations [6th ed.], 231, 648 ; Lewis on Eminent Domain, §§ 254, 341.) No intent to deprive a person of his property rights should be imputed to the law-making power, unless it is expressly declared or is to be necessarily implied from the language of the statute, and it is never necessarily implied if it admits of any other reasonable construction. (Lewis on Eminent Domain, § 341.)

The section under consideration first requires that, upon filing the report, the common council shall assign a time for hearing objections to its confirmation. It seems quite obvious that this provision was intended to apply only to property owners and others interested in the improvement, and to give them an opportunity to object to the confirmation of the report. If the legislature had intended to confer upon the common council the right to arbitrarily set aside the report of the commissioners and refer the matter to a new commission, if it deemed the amount awarded excessive, it would have so declared in unequivocal terms. No such language is to be found in this statute, nor are its provisions such as to create that power by necessary implication. Following that provision is a sentence which seems to render it still more certain that the legislature did not intend to grant any such power. It provides that at the time assigned the council shall hear the allegations of all persons interested, and take proofs in relation thereto. The words " persons interested " would not seem to include the common council, but only such other persons as were in some way interested in the improvement. That no such power was intended is rendered more clear when we find the provision relied upon to sustain it followed by one which plainly relates to the city, and confers upon the common council, in plain and unequivocal terms, the right to set aside the report and abandon the improvement at any time before the final confirmation of the assessment roll. In the latter case the city may decide to abandon the contemplated improvement of its own motion and without a hearing. This portion of the section is a protection to the city to the extent of permitting it to abandon the proceedings when it shall discover that the value of the property is too great to justify the improvement. Thus, the whole section, when taken together, provides for the protection of those interested in the improvement or property taken, other than the city, and by a separate provision provides for the protection of the city.

While it is quite manifest that the earlier provision of this

section relates to persons other than the city, still, if it were construed to include the city as well, the common council would possess no right to arbitrarily set aside the report of the commissioners, without such allegations or proof as would justify its action.    Therefore, it is unnecessary to hold that under no circumstances could the common council set aside the report on motion of the city and direct an application for the appointment of a second commission.    That question we need not now decide.    What we do decide is, that under the circumstances of this case, the common council could not, without other allegations and sufficient proof, arbitrarily set aside the report of one commission and authorize the appoint- ment of another.    So far as we have found any direct author- ity upon the subject, it seems to sustain the conclusion we have reached.    (*Chicago, Rock Island & Pacific Ry. Co.* v. *City of Chicago,* 143 Ill. 641; *Illinois Cent. R. R. Co.* v. *City of Champaign,* 163 Ill. 524; *State of Iowa* v. *City of Keokuk,* 9 Iowa, 438; *City of St. Joseph* v. *Hamilton,* 43 Mo. 283, 288; *District of Columbia* v. *Cemetery,* 5 App. Cas. [D. C.] 520.)

In the *Rock Island* case, in discussing this question, it was said: "To permit a corporation, clothed with the right of eminent domain, to abandon any judicial ascertainment of value that does not conform to its wishes, and through the instrumentality of new petitions submit anew the question of just compensation to successive juries, until a verdict is returned which it regards as sufficiently low, would be to give an undue advantage to one of the parties to the controversy, and work a rank injustice to the citizen and property owners."

In the *Iowa* case it was said: "When the case becomes one between two parties, and the city is one party, seeking to take the property of an individual for the public use, it is claiming too much that one of the parties should have the option to reject an assessment which may not happen to suit his views. *    *    *    The authority for one party to set aside such an award or verdict when it may not suit him, is not to be drawn from a doubtful implication.    If such a power can stand at

all, it is only under an express gift, or a necessary inference.
\* \* \* It seems clear that one of the parties has not the
power to control the commissioners and to appoint new ones
until the damages are brought to square with the views of that
party. As well might the other party claim the right to a
new commissioner, to raise the valuation."

In *City of St. Joseph* v. *Hamilton* it was said: "There is
no just or safe rule of construction by which the party who is
the main actor, and who has the extraordinary privilege of
instituting the proceedings and summoning the jury, should be
allowed, of its own pleasure, not only to reject the finding,
but to proceed as often as it pleases till it finally obtains a
verdict that suits its views. This is in effect allowing the
party to set aside a judgment according to its own caprices till
it finally obtains one that suits its purposes."

In the *District of Columbia* case, the judge delivering the
opinion of the court declared: "If these proceedings are to be
regarded as legitimate legal proceedings, and not as a mere
farce, the public authorities are as much bound by them as the
owners of the land. It requires neither elaboration of argu-
ment nor citation of authorities to show that, when the state
becomes a party to a suit it is as much bound by the judgment
or decree as an individual. It may not litigate the matter
again any more than an individual would be entitled to
litigate it; subject only to the same rules of law that would
govern in the case of individuals, the adjudication is absolutely
binding and conclusive upon the state; and no action, either
of its legislative or of its executive department, could be con-
strued to give such adjudication less binding force than it
would have between individuals. This position we must
regard as elementary and fundamental. \* \* \* It will
scarcely be questioned that, if the District of Columbia were
satisfied with the valuation and the owners of the land were
dissatisfied with it, the latter would still be compelled to part
with their land for the price adjudged to be its value. Can it
be allowed that they would be bound and yet not the district?
And can the latter be permitted to weary out the owners with

successive inquisitions until they procure a finding that is satisfactory to them? The statement of the question would seem to carry its answer with it. We are referred to two cases in which the question has arisen, and where it has been emphatically solved against the contention maintained here on behalf of the District of Columbia. One of these cases is the case of *Rogers* v. *City of St. Charles* (3 Mo. App. 41), and the other is that of *Schneider* v. *City of Rochester* (in the Supreme Court of the State of New York, 61 N. Y. S. R. 63). No authority is cited to the contrary and we presume none could be. Certainly we could not regard as of much value any authority that would sanction the inequality and injustice that would be involved in the contrary opinion."

We have examined the authorities in this state cited by the respondent to sustain a contrary doctrine, but have found none which establishes a principle in conflict with the conclusion we have reached. This view of the case renders it unnecessary to determine whether the statute is constitutional, if subject to the construction contended for by the respondent, as we are clearly of the opinion that it will bear no such construction. We are also of the opinion that the proceedings upon the part of the common council were not justified by the statute, but that its action was unauthorized and that the plaintiff was entitled to the relief demanded.

Before leaving this branch of the case it may be proper to add that there is no claim upon the part of the plaintiff that the defendant was bound to take her property at the price fixed by the commission. This is plainly indicated by the notice which was given to the common council whereby she conceded its right to abandon its proceeding, and requested that it should do so, unless the commissioners' report was confirmed. Therefore, much of the argument of the defendant, and many of the authorities cited in its behalf, have no application to the question presented upon this appeal.

The only remaining question relates to the remedy employed by the plaintiff to protect her rights and property. The defendant contends that as the plaintiff had an adequate remedy at

law she was not entitled to invoke the aid of a court of equity. If the defendant properly pleaded that defense so that the question is presented, it must be admitted that if the plaintiff had an adequate remedy at law, she is not entitled to maintain this action.  The defendant bases its contention that such a remedy existed upon the provisions of its charter, which are to the effect that any person considering himself aggrieved by any part of the report of the commissioners of appraisal may, within thirty days after its confirmation, appeal to the Supreme Court, which shall consider the appeal and examine all questions of law or fact, and which shall confirm or annul such report as the court shall deem just.  (Charter, §§ 183, 187.) It is to be observed, however, that until the confirmation of the report no right of appeal exists, so that as the common council set aside the report in this case there could be no confirmation, and hence no appeal, until a report was made in the proceeding which was confirmed.  Then, for the first time, the right of appeal would arise.  Thus the plaintiff might be subjected to all the expense and trouble of defending her title, or securing her rights before numerous commissions, and still have no right of appeal.  Indeed, she might be subjected to all the evils and hardships to which we have referred, and before any such right would exist.  We think this constituted no such adequate remedy at law as prevented the plaintiff from invoking the aid of a court of equity to secure her just rights in the premises.  Thus we are led to the conclusion that the determinations of the Appellate Division and of the Special Term should be reversed.

The judgments of the Appellate Division and of the Special Term should be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgments reversed, etc.