(No. 34289.—)

ILLINOIS CITIES WATER COMPANY, Appellee, *vs.* THE CITY
OF MT. VERNON *et al.*, Appellants.

*Opinion filed May 23, 1957—Rehearing denied September 16, 1957.*

AUGUST L. FOWLER, of Marion, and ALVIN LACY WILLIAMS, of Mt. Vernon, for appellants.

JOHN A. KIRK, and HILL & DOLAN, both of Mt. Vernon, (W. JOE HILL, of counsel,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

Appellants, who are the city of Mt. Vernon and certain of its officers, here appeal from a decree of the circuit court of Jefferson County granting injunctive relief to appellee, Illinois Cities Water Company, an Illinois corporation, which owns the waterworks system serving the city.

On August 1, 1955, while the parties were involved in litigation before the Illinois Commerce Commission concerning proposed rate increases, the Mt. Vernon city council passed an ordinance which authorized condemnation proceedings to acquire the Mt. Vernon water properties of appellee, and some two weeks later a petition for condemnation was filed in the circuit court of Jefferson County. Appellee moved for dismissal of the petition on the grounds that the eminent domain statute provides no suitable method

for the valuation of a waterworks company, that the city had failed to fulfill all necessary statutory requirements before proceeding by condemnation, and that for the court to assume jurisdiction would violate the due-process and eminent domain provisions of the Illinois constitution. Before this motion was ever acted upon, however, appellee filed the present suit in the same court against the city, its mayor and councilmen, to enjoin the further prosecution of the condemnation action for reasons similar to those advanced in its motion to dismiss. After a hearing the court entered a decree that the condemnation action violated the constitutional rights of appellee and enjoined appellants from prosecuting any suit to condemn the waterworks system. This appeal by the city has followed.

Appellee is a public utility engaged in the business of supplying water to residents of the community under a 30-year franchise granted in 1942 by the city of Mt. Vernon and a certificate of convenience and necessity issued by the Illinois Commerce Commission. In addition it operates waterworks systems in four other southern Illinois communities under similar authority. Its Mt. Vernon system is comprised of some 5600 industrial and domestic customers; approximately 4700 are residents of the city itself and the remaining 900 live outside the corporate limits. At the time the condemnation action was filed, appellee's total assets were worth between $4,000,000 and $8,000,000; the Mt. Vernon system was valued at $2,000,000 to $4,000,000; about 85 per cent of the property sought to be condemned consisted of tangible and intangible personal property including trucks, tools, office furniture, and maintenance equipment; and the Mt. Vernon property was encumbered by a mortgage to the City National Bank and Trust Company of Chicago which required all condemnation proceeds to be used to immediately reduce the outstanding indebtedness in such a manner that bondholders would gain, and appellee lose, a premium ranging from 3 to 6 per cent.

In support of its claim for injunctive relief appellee points out that the value of condemned property is fixed as of the date the condemnation petition is filed, but that being a public utility it is required by the Illinois Commerce Commission to expend thousands of dollars for extending and improving its service subsequent to said filing date. From this appellee argues that although the Revised Cities and Villages Act (Ill. Rev. Stat. 1955, chap. 24, pars. 1—1 to 87—5,) provides for condemnation of a waterworks by a municipality, it furnishes no means by which this "after-acquired property" may be valued; that the statutory authority thus remains dormant until such time as it is implemented by additional legislation; and that any proceedings based thereon before the enactment of such additional authority constitute a taking of private property without due process of law. Appellee also contends the city has made no provision to finance the purchase of said waterworks and that great expense would result from the defense of such litigation. On the other hand, the appellants argue that the Eminent Domain Act (Ill. Rev. Stat. 1955, chap. 47,) provides an orderly and constitutional procedure by which a waterworks may be taken for public use and that injunctive relief was unwarranted in the instant case.

In order to determine the propriety of the present injunction, we must first examine the provisions of the statute involved. Section 1 of the Eminent Domain Act, (Ill. Rev. Stat. 1955, chap. 47, par. 1,) provides that no private property shall be taken or damaged for public use without just compensation, and with the exception of actions brought by the State, the amount of compensation must be ascertained by a jury. Although the taking of property under the right of eminent domain is in derogation of individual rights and must be strictly construed (*Illinois Central Railroad Co.* v. *City of Chicago,* 138 Ill. 453,) it encompasses property of every kind and character, whether real, per-

sonal, tangible, or intangible. (*South Park Commissioners v. Montgomery Ward & Co.* 248 Ill. 299; *City of Edwardsville* v. *County of Madison,* 251 Ill. 265; *Leonard* v. *Autocar Sales and Service Co.* 392 Ill. 182; *Department of Public Works and Bldgs.* v. *Kirkendall,* 415 Ill. 214; *United States* v. *Land in East St. Louis,* 141 F.2d 344.) The general rule is that just compensation must be measured by the property's fair cash market value for its highest and best use at the time the condemnation petition is filed; (*Braun* v. *Metropolitan West Side Elevated Railroad Co.* 166 Ill. 434; *City of Chicago* v. *Collin,* 302 Ill. 270; *Chicago and State Line Railway Co.* v. *Mines,* 221 Ill. 448; *South Park Commissioners* v. *Dunlevy,* 91 Ill. 49;) and this rule in most instances provides a yardstick by which fair compensation may be awarded without penalizing the condemning authority for the inflated prices which usually attend such a project. (*Sanitary District of Chicago* v. *Chapin,* 226 Ill. 499; *City of Chicago* v. *Farwell,* 286 Ill. 415.) The whole purpose of the condemnation proceeding is to satisfy the constitutional and statutory requirements that property not be taken without due process of law and that just compensation be awarded therefor. (Const. of 1870, art. II, secs. 2 and 13; *United States* v. *Jones,* 109 U.S. 513, 27 L. ed. 1015; *A. Backus, Jr., & Sons* v. *Fort Street Union Depot Co.* 169 U.S. 557, 42 L. ed. 853.) As long as rules of law meet these constitutional tests they are of value and should be sustained, but this does not mean they are without exception. In commenting upon the valuation rule in *Metropolitan West Side Elevated Railroad Co.* v. *Siegel,* 161 Ill. 638, the court said (p. 647): "This court and many others have often said that the measure of damages is the market value of the property condemned, and that in arriving at such value it is competent to prove any use,—the highest and best use,—for which it is adapted, and this is undoubtedly the general rule; but this court has never held that the rule is without exception, and that cases

may not arise where a proper observance of the constitutional provision that private property shall not be taken or damaged for public use without just compensation may not require the payment of damages actually sustained, other than those measured by the value of the property taken." In that case the court allowed the cost of removing machinery from the premises as a proper element of damage. In *Braun* v. *Metropolitan West Side Elevated Railroad Co.* 166 Ill. 434, the court in commenting upon its earlier decision stated that in exceptional cases matters not ordinarily included in arriving at just compensation may be considered so as to aid the jury and the court in determining the fair cash value of the property, in view of its present use. *Sanitary District of Chicago* v. *Chapin*, 226 Ill. 499, is another instance in which the court refused to follow the general rule where injustice would result from its application.

We believe the present situation is exceptional and that the value of all waterworks property, including that necessarily added subsequent to the date the condemnation petition is filed, may be determined in an eminent domain proceeding. Here we are not dealing solely with real estate which may be accurately described and inventoried at the time the petition is filed but largely with machinery, trucks, supplies, equipment, and other personal property, the number and description of which will change until such time as the transfer of ownership is accomplished. We must consider too that in order to comply with its certificate of convenience and necessity, appellee must constantly extend its service to those who need it. Because of these circumstances the ordinary rules of valuation must also change so as to put the appellee in as good a financial condition after the transfer as it was before. Nothing short of such an amount conforms to the constitutional requirement of just compensation. (*City of Chicago* v. *Koff*, 341 Ill. 520; *City of Chicago* v. *Callender*, 396 Ill. 371.) Our constitution requires that such matters be decided by jury, (Const.

of 1870, art. II, sec. 13,) and it has been recently held that in those instances where the legislature has not chosen to prescribe a particular method of valuation, the determination of just compensation for the taking of private property becomes a judicial proceeding to be regulated by the court in the exercise of its judicial discretion. (*Department of Public Works and Bldgs.* v. *Kirkendall,* 415 Ill. 214; *Iowa Electric Light and Power Co.* v. *City of Fairmont,* 243 Minn. 176, 67 N.W.2d 41.) It is our opinion that the eminent domain statute does provide a constitutional and lawful means by which the so-called "after-acquired property" may be valued; and that in fixing the amount of compensation to be awarded, the jury may consider not only the value of the property at the time the petition was filed but also the worth of all extensions, additions, and improvements of the waterworks property which were necessarily and in good faith subsequently made or commenced by appellee in accordance with its operating authority.

There is specific authority for the acquisition by a municipality of a public utility in article 49 of the Revised Cities and Villages Act, (Ill. Rev. Stat. 1955, chap. 24, par. 49—1 *et seq.*) Provision is made in article 49 and other articles in said act granting to municipalities the right to take property by condemnation proceedings. Likewise, authority has been given by various articles to raise funds for construction and acquisition by means of public utility certificates, general obligation bonds and revenue bonds. It is not within the province of this court to designate the means by which the contemplated acquisition may be financed nor to point out the article or articles of said act under which it should proceed.

The next question raised is whether property already appropriated to public use, and in fact devoted to such use, in the hands of a public utility corporation can be rightfully taken away from such utility, even by the authority of a statute to that effect, for the purpose of sub-

jecting it to the same public use in the hands of a municipality. This court has held, where the public use in question is the same, such taking, as between two public utilities, would undoubtedly degenerate into the taking from one for the mere purpose of giving to another, which is not within the domain of legislative power. (*Lake Shore and Michigan Southern Railway Co.* v. *Chicago and Western Indiana Railroad Co.* 97 Ill. 506; *St. Louis, Alton and Terre Haute Railroad Co.* v. *Belleville City Railway Co.* 158 Ill. 390; *Suburban Railroad Co.* v. *Metropolitan West Side Elevated Railroad Co.* 193 Ill. 217; see also *Litchfield and Madison Railway Co.* v. *Alton and Southern Railroad,* 305 Ill. 388.) None of these cases involve the taking by a municipality. We have not heretofore passed upon this question, although it has been considered by other jurisdictions.

The case of *In re City of Brooklyn,* 143 N.Y. 596, 38 N.E. 983 (Ct. of Appeals of N.Y. 1894) involved this question. The State legislature had authorized the city of Brooklyn to condemn a waterworks system which had been owned by a private company and had been supplying water to a locality which had been annexed to the city of Brooklyn. One of the arguments against the use of the powers of condemnation was that it was not a condemnation for a public use and thus went beyond the scope of the power of eminent domain. In disposing of this argument, the Court of Appeals said at page 619: "The appellant's other point as to the unconstitutionality of the act is that it authorized the condemnation of property which is already devoted to a public use, without designating any different or larger public use to which it is to be applied. We do not think that there is force in this objection. While the purpose of the waterworks company was public in its nature, it cannot be said to be strictly identical with the municipal purpose. A municipal corporation is a public and governmental agency. It holds property for the gen-

eral benefit, with a larger scope of use." Such case was appealed to the United States Supreme Court as *Long Island Water Supply Co.* v. *Brooklyn,* 166 U.S. 685, 41 L. ed. 1165. On the appeal, it was argued that the municipality, in exercising its power of eminent domain in this manner, was violating the contracts clause of the Federal constitution because it thereby suspended the corporation's charter and did away with its contract with the municipality to supply it with water. The court said that these contracts of the corporation were as much a part of the corporation's property as its physical assets and were equally subject to condemnation. It was said by the court at page 689: "That the supply of water to a city is a public purpose cannot be doubted, and hence the condemnation of a water supply system must be recognized as within the unquestioned limits of the power of eminent domain. It matters not to whom the water supply system belongs, individual or corporation, or what franchises are connected with it—all may be taken for public uses upon payment of just compensation."

A similar question was presented to the Supreme Court of Washington in the case of *State ex rel. Washington Water Power Co.* v. *Superior Court,* 8 Wash.2d 122, 111 P.2d 577. There a county public utility district (a municipality) sought to condemn a private electric utility company so that the municipality could take over the operation of the company. The condemnation was granted by the superior court and this appeal was taken. As to the right of a municipal corporation to use its power of condemnation in this manner, the court said at page 131: "A municipal corporation may be given the right by the legislature to condemn and take the property of a privately owned public utility corporation already devoted to the same public use, for the reason that the use of the public utility by a municipal corporation is larger in scope and of more general benefit to the public. *Tacoma* v. *Nisqually Power Co.* 57

Wash. 420, 107 Pac. 199; *State ex rel. Peabody* v. *Superior Court,* 77 Wash. 593, 138 Pac. 277; *State ex rel. Willapa Electric Co.* v. *Superior Court,* 196 Wash. 523, 83 P.2d 742."

We adopt the view expressed in the foregoing cases and hold that a municipality can acquire the property of an existing public utility devoted to the same use as that contemplated by the condemnor, by eminent domain, provided that all requirements of the statutory provisions authorizing the procedure are properly followed.

Having examined the applicable substantive law, we must now consider the final question of whether the trial court erred in granting injunctive relief in the present case. There is no doubt an injunction is proper to prevent an unlawful appropriation of land by a public corporation which has made no attempt to acquire such rights by condemnation or other lawful procedure. (*Springer* v. *City of Chicago,* 308 Ill. 356; *Davis* v. *City of Chicago,* 333 Ill. 422.) However, this is not the present case. Here a petition for condemnation *was* filed and no action was taken to appropriate or damage private property without the payment of just compensation. In fact, the matters which form the basis for appellee's separate action for injunctive relief had previously been raised by its motion to dismiss the condemnation petition. A similar circumstance was presented in *Illinois Central Railroad Co.* v. *City of Chicago,* 138 Ill. 453, where the court, in refusing to authorize an injunction, said (p. 463-4) "we are not aware of any authority that authorizes or gives jurisdiction to courts of equity to proceed by injunction, unless there is an excess or abuse of the power conferred by law, or there is an attempt to take and appropriate the property without authority of law, or in a manner and to an extent not authorized by law. It is not pretended that the city was seeking to take possession of the parcel of land in question, nor is it sought to be enjoined from any act or acts having

for their object the taking possession of the same without making compensation, or of interfering with the defendant in its enjoyment prior to the ascertainment and payment thereof. What is sought is, to enjoin the city from prosecuting the proceedings for condemnation, by which the just condemnation may be ascertained."

We do not agree with the appellee's argument that it will suffer irreparable damage if forced to defend the condemnation action. This method of acquiring private property for public use has a history as long as the State itself and furnishes a means by which contrary views may be litigated. The fact that some expense may be incurred therein, that further eminent domain proceedings could be instituted, or that the value of appellee's outstanding bonds may be thereby affected, does not warrant equitable intervention.

For the reasons stated it is our opinion the lower court erred in granting injunctive relief. The decree of the circuit court of Jefferson County is therefore reversed.

*Decree reversed.*