134 So.2d 848 (1961)
CITY OF DANIA, a Municipal Corporation, Petitioner,
v.
CENTRAL AND SOUTHERN FLORIDA FLOOD CONTROL DISTRICT, a Public Corporation, Respondent.
No. 2149.
District Court of Appeal of Florida. Second District.
May 17, 1961.
On Rehearing September 20, 1961.
Clarke Walden, of Walden & Ryan, Dania, for petitioner.
Robert Grafton, West Palm Beach, for respondent.
SHANNON, Judge.
The petitioner, City of Dania, a municipal corporation, has filed petition for writ of certiorari to review an order of the court below. Central and Southern Florida Flood Control District, a public corporation, is respondent.
In the cause below, from a study of the record, it appears that the petitioner is seeking a review of an interlocutory order rendered in this eminent domain suit.
It is readily seen that this petition for certiorari is in effect an attempt to appeal an interlocutory order in a law action, contrary to the rules of appellate practice in Florida. Certain exceptions have been made by the appellate courts to permit certiorari to review interlocutory orders under exceptional circumstances. See Brooks v. Owens, Fla. 1957, 97 So.2d 693, 695, where our Supreme Court said:
"* * * Where it clearly appears that there is no full, adequate and complete remedy by appeal after final judgment available to the petitioner, this court will consider granting the writ, as where the lower court acts without and in excess of its jurisdiction, *849 or the order does not conform to essential requirements of law and may cause material injury throughout subsequent proceedings for which the remedy by appeal will be inadequate. Kauffman v. King, Fla. 1956, 89 So.2d 24; Huie v. State, Fla. 1956, 92 So.2d 264. See also 5 Fla.Jur. Certiorari Sec. 12."
This question of granting or denying certiorari has been reviewed by this court recently in the case of Rich v. Harper Neon Co., Fla.App. 1960, 124 So.2d 750.
We are led to take jurisdiction of this case by the opinion of the Supreme Court of Florida in Howard Johnson, Inc., of Florida v. State Road Department of Florida, Fla. 1956, 90 So.2d 306, wherein it said:
"This is a condemnation proceeding wherein the petitioner herein was defendant in the circuit court. In its answer Howard Johnson, Inc., attempted to create an issue on the necessity for taking. At the threshold we are impelled to observe that this is a type of common law action in which in all probability we would grant `special dispensation' and entertain the petition for certiorari if the answer or those portions of it which were stricken were sufficient to establish such an issue."
In this eminent domain proceedings the Central and Southern Florida Flood Control District had sought to condemn certain real estate which was owned by the City of Dania. Prior to and during the suit the City of Dania had used the real estate in question for a garbage dump. The circuit judge, by order, determined that the circuit court had jurisdiction of the cause, appointed appraisers to view and determine the appraised value of the parcel of land, and had set a time and place for receiving and considering the report of the appraisers and to hear testimony relating thereto. The petitioner filed a motion to dismiss and an answer. The sole question which we have to consider is whether or not the Flood Control District has the right to condemn property already devoted to public use.
The City of Dania is a municipality, with all the powers, including the power of eminent domain, that usually appertain to such corporations. The Flood Control District has been created by the Legislature, and it is to its powers, as contained in the statutes, that we must look.
Section 74.15, Florida Statutes, F.S.A., provides:
"(1) The power of eminent domain is confirmed, invested in and granted unto any lawfully constituted flood control district of this state, any lawfully constituted drainage or subdrainage district of this state and any lawfully constituted housing authority created under the provisions of any laws creating or authorizing the creation of housing authorities within this state, for the public use, and the same are hereby declared, for the purpose of this law, to be bodies corporate. The proceedings herein provided for shall be maintained by and in the name of the authority for whose benefit the proceedings are instituted."
Section 74.16, Florida Statutes, F.S.A., provides:
"In addition to the procedure provided in section 74.15 the proceedings provided in section 74.01-74.141 may be instituted by any lawfully constituted flood control district of the state."
With relation to the creation of flood control districts, it is provided by § 378.16 (1), Florida Statutes, F.S.A.:
"In order to carry out the cooperative part of the works for the district, and for effectuating the purposes of this chapter, the governing board is authorized to clean out, straighten, enlarge or change the course of any waterway, natural or artificial, within or without the district; to provide *850 such canals, levees, dikes, dams, sluiceways, reservoirs, holding basins, floodways, pumping stations, bridges, highways and other works and facilities which the board may deem necessary; establish, maintain and regulate water levels in all canals, channels and reservoirs owned and maintained by the district; to cross any highway or railway with works of the district and to hold, control and acquire by donation, lease or purchase, or to condemn any land needed for rights-of-way or other purposes, and may remove any building or other obstruction necessary for the construction, maintenance and operation of the works, and to hold and have full control over the works and rights-of-way of the district."
But, § 378.46, Florida Statutes, F.S.A., provides:
"(1) When it is found to be in the public interest and for the public convenience and welfare, and for the public benefit, and necessary for carrying out the works of improvement of any flood control district referred to in this chapter for the protection of property and the inhabitants in said district against the effects of water, either from its surplus or deficiency, and for assisting said district in acquiring land for the purposes of said district at least public expense, any state agency, any county, any drainage district, any municipality or any governmental agency or public corporation in this state holding title to land, is hereby authorized, in the discretion of the proper officer or officers, the county commissioners of any county, or the governing board of any agency referred to in this section, to convey the title to or to dedicate land, title to which is in such agency, including tax reverted land, or to grant use rights therein to any flood control district created under any law enacted by the legislature at its 1949 session."
The delegation of powers to municipalities, among other things, provides, in § 180.06, Florida Statutes, F.S.A.:
"Any municipality or private company organized for the purposes contained in this chapter, is authorized * * * (4) to provide for the collection and disposal of sewage and other liquid wastes; (5) to provide for the collection and disposal of garbage; (6) and incidental to such purposes and to enable the accomplishment of the same, to construct reservoirs, sewerage systems, * * * collection systems, treatment and disposal works; * * *"
Further, § 180.22, Florida Statutes, F.S.A., provides:
"Any municipality or private company or corporation authorized to carry into effect any or all of the purposes defined in this chapter, may exercise the power of eminent domain over * * * drainage districts, bridge districts, school districts, and any other public or private lands or property whatsoever necessary to enable the accomplishment of the purposes of this chapter."
We have set out the acts of the legislalature which, in part, deal with the subject of eminent domain.
Flood control districts are clearly creatures of the legislature, having no power or authority other than that conferred upon them by statute. Thus, it is only from the statutes that these districts have the power of eminent domain. The power to condemn real property which is being put to a public use by a municipal corporation is not contained in any such statute, nor can we construe the above quoted statutes as giving this authority. See Orange County v. Fordham, 1948, 160 Fla. 259, 34 So.2d 438; Peavy-Wilson Lumber Co. v. Brevard County, 1947, 159 Fla. 311, 31 So.2d 483, 172 A.L.R. 168; *851 Wilton v. St. Johns County, 1929, 98 Fla. 26, 123 So. 527, 65 A.L.R. 488.
The rule is stated in 18 Am.Jur., Eminent Domain, § 83 as follows:
"In the absence of authority conferred expressly or by necessary implication, an agency of the state cannot take land devoted to a public use by a political or governmental agency * * *."
In McQuillin on Municipal Corporations, 3d Ed., Vol. 11, § 32.67, the following is found:
"The rule then being that property already devoted to a public use cannot be taken for another public use, at least if such use is an inconsistent one, without legislative authority expressly given or `necessarily implied,' it becomes important to determine, if possible, when authority can be considered to be necessarily implied. * * *"
Inasmuch as no Florida cases have been cited us and we have found none bearing directly on the question, we have, of necessity, studied the decisions of other jurisdictions. From these cases it is clear that the rule is as set out above in the quoted textual material. In some cases the "doctrine of prior use" is explicitly relied upon by the courts. There are some exceptions but these exceptions, in our opinion, do not apply to the instant case.
In New York the rule is well expressed in Central Hudson Gas & Electric Corp. v. Morgenthau, 1932, 234 App.Div. 530, 256 N.Y.S. 97, 100, wherein the court said:
"The rule is well settled in this state that a general grant of power to condemn property does not extend to property already acquired for, or devoted to, a public use. Such property can only be condemned by special legislative authority and clearly expressed or necessarily implied. New York Central & H.R.R. Co. v. City of Buffalo, 200 N.Y. 113, 117, 93 N.E. 520; Matter of City of New York (Newport Avenue) 218 N.Y. 274, 276, 112 N.E. 911; Matter of City of New York (Saratoga Avenue) 226 N.Y, 128, 135, 123 N.E. 197. The power to condemn must be exercised in strict conformity with the terms of the statute conferring the right. Matter of Water Commissioners of Amsterdam, 96 N.Y. 351, 357; Schneider v. City of Rochester, 160 N.Y. 165, 172, 54 N.E. 721; County of Jefferson v. Horbiger, 229 App. Div. 381, 383, 243 N.Y.S. 30."
In Illinois the rule is expressed in City of Moline v. Greene, 1911, 252 Ill. 475, 96 N.E. 911, 912, 37 L.R.A.,N.S., 104, where the court said:
"* * * The general rule is that such property cannot be taken and appropriated to another and different use, unless the legislative intent to so take it has been manifested in express terms or by necessary implication * *
"Appellant argues that taking 10 feet of land will not destroy the library; that it will still have sufficient ground for carrying out the purposes for which it was established. The case must be controlled by legal principles, and not by considering the practical effect of allowing the taking of the land in this particular case. If it is held appellant has authority to take part of the property, it would necessarily require holding that all of the property could be taken by virtue of the same authority, if that were sought to be done. Our conclusion upon this branch of the case is that no authority exists in appellant to take the property of the library for the purpose of devoting it to a public street."
In the New Jersey case of Township of Weehawken v. Erie Railroad Company, 1956, 20 N.J. 572, 120 A.2d 593, 596, in a well-reasoned opinion, in which Chief Justice Vanderbilt concurred, it was stated:

*852 "The doctrine of prior use is well recognized. * * * Simply stated, the rule denies exercise of the power of condemnation where the proposed use will destroy an existing public use or prevent a proposed public use unless the authority to do so has been expressly given by the Legislature or must necessarily be implied * * *.
"* * * The rule stems from the recognition that municipal and many private corporations possess general powers of condemnation delegated by the Legislature. If one such body may acquire land used or held for a public purpose by another corporation under a general power of condemnation, the latter would logically be free to re-acquire the same property * *."
On this general subject see New Jersey Turnpike Authority v. Parsons, 1949, 3 N.J. 235, 69 A.2d 875, an opinion written by Chief Justice Vanderbilt.
In connection with the question under consideration and in support of our decision, see Texas Turnpike Authority v. Shepperd, 1955, 154 Tex. 357, 279 S.W.2d 302; and Illinois Cities Water Company v. City of Mt. Vernon, 1957, 11 Ill.2d 547, 144 N.E.2d 729, 68 A.L.R.2d 384.
It is the holding of this court that the Central and Southern Florida Flood Control District has no authority to condemn the property described in the petition for condemnation.
The petition for certiorari is granted and the order rendered by the court below, dated August 29, 1960, be and the same is hereby quashed.
Certiorari granted.
ALLEN, C.J., concurs.
SANDLER, HARRY N., Associate Judge, dissents.
SANDLER, HARRY N., Associate Judge (dissenting).
The question involved in this appeal may be stated as follows: Does the Flood Control District have the authority to condemn land owned by the City of Dania, a municipal corporation, and used by the city for a public purpose as a garbage dump in whole or in part, when the tract in question is necessary for drainage purposes? The majority opinion answers this question in the negative, based primarily upon the general rule that such property cannot be taken and appropriated to another and different use unless the legislative intent to so take has been manifested in express terms or by necessary implication and that the statutory powers conferred upon the Flood Control District do not contain this authority.
The applicable sections of the statute are quoted in the Court's opinion and need not be repeated here. While it is true that such is the general rule, there are several well established exceptions. One of the exceptions to which the general rule is subject is stated in 12 Florida Jurisprudence, Eminent Domain, Section 53, as follows:
"Under the general authority to condemn for public use, property devoted to one public use may be condemned for another which is of superior rank in respect of public necessity, or which may be exercised consistently with the use first attaching."
Another exception to the general rule is that the condemning authority has the power to take a portion of the tract in question because the use to which it will be put is compatible with the current use of the property. The rule stated in 29 C.J.S. Eminent Domain § 74, page 865, is as follows:
"New use consistent with prior use. The rule that power to take property devoted to a public use must be conferred expressly or by necessary implication applies only where the second use will destroy or injure the use to *853 which the land was originally appropriated. So, in the absence of some statutory provision expressly or by implication forbidding it, property devoted to one public use may under general statutory authority be taken for another public use, where the taking will not materially impair or interfere with or is not inconsistent with the use already existing, and is not detrimental to the public. It is not material that some inconvenience may result to the prior occupant, if the conditions are such that the two uses can stand together."
The principle is illustrated in the following cases:
"The judge was authorized to find that the use of a portion of the right of way of the railroad company for public road across the tracks was not so inconsistent with existing use as to unduly diminish the exercise of its right by the railroad company. * * *
"Land which has already been appropriated for the benefit of the public may be subjected to a second servitude * * * when the latter is not destructive of the first condemnor's right." Seaboard Air-Line R. Co. v. Camden County, 173 Ga. 93, 159 S.E. 668, 670.
"As a general rule, property appropriated to the public purpose can not be taken for another public use without express or implied legislative authority when such taking results in practical destruction of the prior use unless the subsequent taking is for a public purpose of greater or paramount importance which cannot be accomplished in any other practical way. * * *
"The rule against taking property dedicated for one public use * * * has no application where the proposed use will not materially interfere with the operation of the existing one." Snellen et ux. v. Brazoria County, Tex. Civ.App., 224 S.W.2d 305, 311.
In 1 Nichols on Eminent Domain, Section 2.2(7), the rule is stated as follows:
"In view of the fact that the general rule denying the right to take property already devoted to a public use is predicated upon the theory that the existing use is thereby impaired or destroyed, the fact that such use will not be materially impaired or destroyed is sufficient to take the case out of the general rule. If the physical conditions are such that both uses may exist simultaneously it is immaterial that some inconvenience may be caused to the original user.
"A particular public easement may be imposed upon land already subject to a different public easement without express legislative authority if the exercise of the second easement will not interfere with the exercise of the first, or if the amount of land taken is not enough to impair the use of the remainder for the original purpose. This rule has been extended so as to justify the imposition of an easement without express legislative authority upon land already devoted to a different public use, even to the detriment of the prior use, when such detriment is trivial and the two easements can be exercised at the same time without serious conflict, and the expense of laying out the second work over private land would be wholly disproportionate to the injury to the earlier undertaking from the encroachment upon its location."
It appears from the transcript that the district takes in seventeen counties in whole or in part, and comprises about 15,500 square miles. The purpose of condemning the tract in question is to widen an already existing canal necessary for drainage purposes. In order to determine the effect of the taking of the tract in question upon the entire tract used by the city, the taking of testimony is necessary. This testimony may develop that the entire tract may be destroyed *854 for use by the city or, on the contrary, that the need of the tract sought to be condemned is superior to the use made of it by the city, or that the taking of such tract may not materially interfere with the operation of the existing use. I would return the case to the trial court with directions to take testimony to determine these questions. For these reasons I respectfully dissent from the majority opinion.

On Rehearing.
ALLEN, Judge.
The respondent, Central and Southern Florida Flood Control District, a public corporation, filed a petition for condemnation against the City of Dania, a municipal corporation. The petition sought to acquire property owned by the City of Dania for the purpose of improving canal 10 (Hollywood Canal), the canal already located and flowing through a part of the land sought to be condemned in said action. On August 29, 1960, the lower court entered the following order:
"This cause coming on to be heard before me, upon Petition for Condemnation, declaration of taking and notice to appear and show cause, filed by the petitioner, Central and Southern Florida Flood Control District, and all facts being considered, it is thereupon, ordered, adjudged, and decreed:
"1. That this court has jurisdiction of this cause and that the sufficiency of the pleadings is hereby determined and established.
"2. That Robert F. Graves of Hollywood, Florida, and Barney Crowley, of Hollywood, Florida, are hereby appointed appraisers to view and determine the appraised value of the parcel of land involved in this suit, which is located in Broward County, Florida, said parcel being more particularly described in the petition for certiorari.
"3. The above appraisers, after viewing and determining the value of said parcel, shall report the appraised value thereof to the court by September 13, 1960.
"4. It is further ordered and adjudged, that on Tuesday, September 20, 1960, at the hour of 2:45 o'clock P.M., in the office of the undersigned Circuit Judge, Broward County Court House, Fort Lauderdale, Florida, is set as the time and place for receiving and considering the report of the appraisers and to hear testimony relating thereto.
"Done and ordered, in Chambers, this 29th day of August, 1960."
The City of Dania subsequently filed in this court its petition for writ of certiorari against the Central and Southern Florida Flood Control seeking to have the above order quashed upon the theory that the lands involved in the eminent domain suit below had been used and were currently used by the City of Dania as a garbage dump, and since the property in question was used by the city for public use, another public corporation had no power to condemn the said property for another and different use.
The record accompanying shows that subsequent to the entrance of the order sought to be quashed on the 29th of August, 1960, that on August 31, 1960, a motion to stay entry of order of taking was filed, and on the same date a motion to dismiss, which motion alleged that the petition failed to allege whether the land sought to be appropriated was held and owned by the defendant for public purposes and that the petition failed to allege any statutory authority granting to the petitioner the right to condemn lands of the defendant which are devoted to a public use.
The City of Dania also on the 31st of August, 1960, filed its answer in which it affirmatively alleged that the lands involved in the eminent domain proceedings had *855 been used for a period in excess of twenty years as a municipal garbage dump and that it, therefore, was not subject to condemnation by the petitioner. The motion to dismiss was denied by the judge on the 31st of August, 1960.
The order sought to be quashed in this court was the type of order required to be entered in proceedings supplemental to eminent domain authorized by Chapter 74, Florida Statutes, F.S.A.
Section 74.03, Florida Statutes, F.S.A., provides that at a time designated in a notice all parties may appear and be forthwith heard upon questions of jurisdiction of the court and sufficiency of the pleadings, and also upon suggestions of the parties in respect to the persons to be appointed as appraisers. The section further provides that in the event of jurisdictional questions and questions relating to the sufficiency of pleadings are resolved in favor of the petitioner, the court shall enter an order appointing not more than three disinterested persons as appraisers to view and appraise the premises and report the appraised value thereof to the court within a time limit fixed by such order, and such order shall also fix a time and place for the court to receive and consider the report of the appraisers and if necessary take additional testimony relating thereto.
Section 74.04, provides that upon the date for hearing the report of appraisers that all parties may introduce testimony as to the value of the property sought to be condemned and that the parties shall also have the right to introduce testimony and be heard upon the question as to whether or not the petitioner is properly exercising the authority delegated to it in taking the said property.
As we view the order entered below, it determined nothing except the sufficiency of the petition for eminent domain and appointed appraisers to evaluate the property. The petition for condemnation alleges the property sought to be condemned as owned by the City of Dania but does not show in what capacity it was owned or whether used for public purposes or not. We would, therefore, deny the petition for writ of certiorari.
This court, on May 17, 1961, in an opinion by Judge Shannon, which was concurred in by this writer and a dissent thereto filed by Associate Judge Sandler, held that the Central and Southern Florida Flood Control District had no authority to condemn the property described in the petition for condemnation, that the petition for certiorari be granted, and the order rendered by the court below, dated August 29, 1960, be quashed.
The dissenting opinion stated the following question: "Does the Flood Control District have the authority to condemn land owned by the City of Dania, a municipal corporation, and used by the city for a public purpose as a garbage dump in whole or in part, when the tract in question is necessary for drainage purposes?" The briefs of both the petitioner and the respondent in this court argue the validity vel non of the order sought to be quashed upon the theory that the pleadings below properly raised this question.
The dissenting opinion stated:
"Another exception to the general rule is that the condemning authority has the power to take a portion of the tract in question because the use to which it will be put is compatible with the current use of the property. The rule stated in 29 C.J.S. Eminent Domain § 74, page 865, is as follows:
"`New use consistent with prior use. The rule that power to take property devoted to a public use must be conferred expressly or by necessary implication applies only where the second use will destroy or injure the use to which the land was originally appropriated. *856 So, in the absence of some statutory provision expressly or by implication forbidding it, property devoted to one public use may under general statutory authority be taken for another public use, where the taking will not materially impair or interfere with or is not inconsistent with the use already existing, and is not detrimental to the public. It is not material that some inconvenience may result to the prior occupant, if the conditions are such that the two uses can stand together.'"
Subsequently, it was stated in the dissenting opinion that "* * * In order to determine the effect of the taking of the tract in question upon the entire tract used by the city, the taking of testimony is necessary. This testimony may develop that the entire tract may be destroyed for use by the city or, on the contrary, that the need of the tract sought to be condemned is superior to the use made of it by the city, or that the taking of such tract may not materially interfere with the operation of the existing use. I would return the case to the trial court with directions to take testimony to determine these questions. For these reasons I respectively dissent from the majority opinion."
Since we now hold, on rehearing, that the order sought to be quashed was proper and that certiorari should necessarily be denied, we would further suggest the lower court, on the remand of this case, take testimony to determine whether the taking of the City of Dania's property for widening the canal will materially impair or interfere with the public use to which it is now subjected by the city.
Certiorari denied.
SHANNON, C.J., concurs.
SANDLER, HARRY N., Associate Judge, concurs specially.
SANDLER, HARRY N., Associate Judge (concurring specially).
I concur in the opinion prepared by Judge ALLEN on rehearing except that in the suggestion to the trial court to take testimony, I would include the question of the need of the tract sought to be condemned being superior to the use made of it by the city, this question in my opinion being inherent in this case.