M & A ELECTRIC POWER COOPERA-TIVE, a Corporation, Plain-tiff-Respondent,

v.

Lucas GEORGER and Dorothy Georger et al., Defendants-Appellants.

No. 55977.

Supreme Court of Missouri, Division No. 1.

May 8, 1972.

Opinion Modified on Court's Own Motion June 12, 1972.
Motion for Rehearing or to Transfer to Court En Banc Denied June 12, 1972.

Dalton, Treasure & Bullard, Kennett, for respondent.

Albert C. Lowes, Buerkle, Buerkle & Lowes, Jackson, for appellants.

WELBORN, Commissioner.

Action to condemn perpetual easement for electric transmission line. Commis-sioners awarded property owners $9,940. Both parties filed exceptions and jury trial resulted in verdict for landowners of $2,500. They have appealed.

Lucas and Dorothy Georger were own-ers as tenants by the entirety of a 237-acre farm in northeast Stoddard County. M & A Electric Power Cooperative, a corpora-tion organized under Chapter 394, RSMo 1969, V.A.M.S., entitled "Rural Electric Co-operatives," planned to construct a 345,000 volt electric transmission line. For that purpose it sought an easement across the Georger farm near its east boundary. The center of the 150' easement was 177.4' from the southeast corner of the farm on its southern boundary and ran north and slightly east to a point 62.5' from the north-east corner. The length of the easement across the Georger property was 2,634 feet. Three "H" frame structures would be built on such easement. Each consisted of two poles set 20' apart, braced to give the ap-pearance of an "H", with crossarms carry-ing wires which at their lowest point would be 33' above the ground.

A right-of-way agent for M & A talked to Mr. Georger about the easement sought across his property and offered Georger $200 per pole structure for the easement. According to the agent, Georger told him that he would not sign the easement and that there wasn't any use to come back, he wasn't going to talk about it. Thereafter, condemnation proceedings were filed.

At the trial on the exceptions, the date of taking was agreed to have been Septem-ber 22, 1969. For the defendants, Mr. Georger testified that his farm had a value of $161,975 before the taking and $143,540 after, or damage of $18,435. Mr. Thomas Meyer, a real estate broker in Cape Girar-deau with 25 years' experience and past president of the Missouri Real Estate As-sociation, testified to a before and after value of $177,750 and $159,915, respective-ly, or damage of $17,835. Mr. W. J. (Dub) Crutcher of Essex, a real estate and public fee appraiser with 17 years' experi-

ence, testified to before and after values of $142,200 and $130,147, or $12,053 damage.

For plaintiff, Mr. Max Chandler, a real estate broker from Sikeston with 15 years' experience, testified to before and after values of $119,000 and $118,100, or $900 damage. Mr. Willis Conner of Dexter, a realtor for 20 years, testified to before and after values of $142,800 and $141,600, or $1,200 damage. Mr. Berbage Bryant of Dexter, a realtor for 18 years, testified to before and after values of $129,000 and $128,000, or $1,000 damage. Mr. Bon Aslin, a farmer from Bloomfield who had been on the Castor Township Board for 16 years, testified to before and after values of $94,800 and $94,200, or damage of $600.

The jury returned a verdict for defendants for $2,500.

Prior to the order of condemnation and appointment of commissioners, the defendants moved to dismiss the condemnation petition on three grounds:

1. The plaintiff has not shown that it was acting within the scope of Chapter 394, RSMo, because it did not have rural residents as members and merely furnished power to four other cooperatives.

2. Plaintiff has no power to condemn a perpetual easement because it was chartered in 1949 for a duration of only 50 years.

3. Plaintiff has not proved that it negotiated in good faith with both defendants in an effort to purchase the easement.

The motion was overruled. It was renewed at the close of the jury trial and again overruled. On this appeal, the ruling of the trial court is assigned as error.

■ By their answer to the petition, defendants admitted "that a certificate of incorporation was issued to this plaintiff by the Secretary of State's Office on the 10th of August, 1949, authorizing it to have all powers, duties and privileges appertaining to rural electric cooperative under what is now Chapter 394, RSMo, [1969]." Having so admitted the corporate status of plaintiff, defendants may not collaterally attack plaintiff's status as such or its right to exercise the powers granted corporations organized under Chapter 394, which includes the right to acquire property by eminent domain. § 394.080(11), RSMo 1969, V.A. M.S. 27 Am.Jur.2d Eminent Domain, § 400, p. 279.

■ By § 394.080(2), RSMo 1969, V.A. M.S., an electric cooperative corporation has a duration of 50 years. Such limitation on the term of the corporate existence does not limit the nature or the extent of interest in real estate which the corporation may acquire. Owensboro v. Cumberland Telephone & Telegraph Co., 230 U.S. 58, 71, 33 S.Ct. 988, 57 L.Ed. 1389. The objection that the limitation on the plaintiff's term of existence to 50 years prevents its acquisition of a permanent easement is without merit.

■ On the final ground of the motion to dismiss, the plaintiff produced evidence that its agent made Mr. Georger an unconditional offer of $200 per pole structure for the easement it sought and that Mr. Georger declined the offer and told the agent he would sign no grant of easement. This evidence was adequate to meet the jurisdictional showing that the condemnor and "the owners cannot agree upon the proper compensation to be paid * * *." § 523.010, RSMo 1969, V.A.M.S. The fact that the agent did not discuss the offer with Mrs. Georger does not defeat the right of plaintiff to condemn. Mr. Georger would have been required to join in any grant of easement and his flat refusal to do so made unnecessary the tender of the offer to Mrs. Georger.

Appellants' reliance on this issue upon State ex rel. State Highway Commission v. Pinkley, Mo.App., 474 S.W.2d 46, is misplaced. In that case the Highway Commission did not make an unconditional good faith offer to the landowner. The offer of a price "subject to the approval

of the State Highway Commission * * *" was held to have been no offer whatever. 474 S.W.2d 49, 50[3]. In this case, the offer and its refusal were sufficient to show the inability of the parties to agree upon the compensation to be paid.

■ Appellants contend that the makeup of the jury denied them a fair trial.

Prior to voir dire examination of the jury, there was extensive discussion among counsel and the court concerning the relationship between customers of the four cooperatives to which M & A distributed power and M & A. Two of such cooperatives, Scott-New Madrid-Mississippi Electric Cooperative and Ozark Border Electric Cooperative, operated in Stoddard County. Upon the insistence of counsel for appellants that the relationship was such as would create an interest which would disqualify the customers from serving as jurors in the case, the trial court concluded that the relationship itself was not disqualifying but that he should inquire of the jurors whether or not by reason of such relationship they considered themselves to have an interest in the outcome of the suit. The court received affirmative responses to the inquiry about members of the panel being customers of Scott-New Madrid-Mississippi Cooperative and Ozark Border and then asked:

"Now, is there anything in your being thus connected with either of these cooperatives that would influence you in any way in a suit in which the M & A Electric Power Cooperative is a party? Would your being a customer of these co-ops that I have mentioned—would that influence you in any degree, either for or against the M & A Electric Power Company who is a party to this lawsuit? Do any of you know any reason that that might have any influence on you, the fact that you are customers either of the Ozark Border Co-op or the Scott-New Madrid-Mississippi Co-op? If any of you feel that that would in anywise influence you, would you please

raise your hand? [no response] All right. * * *"

Appellants' counsel examined individually each member of the panel who was a member of Scott-New Madrid-Mississippi or Ozark Border, along the following lines:

"MR. LOWES: What I am getting at here, and I think there will be testimony from the witness stand, that M & A Electric Cooperative is owned by four cooperatives, two of which are Ozark Border and Scott-Mississippi-New Madrid. Two others are Pemiscot area, up in the Fredericktown area, which would not be in this county, no mention of those. Do you feel that by virtue of being a customer and member of that Ozark Border Cooperative that you could be fair if chosen to sit here?

"MR. McGOWEN: I think so.

"MR. LOWES: You wouldn't have any hesitancy if you felt after hearing the evidence and His Honor's instructions, feel that Mr. Georger was entitled to a substantial sum of award, would you have any hesitancy of awarding him a substantial sum of money? You might think, 'If I go another thousand, it might have to raise my rates two cents or something like that?' You wouldn't have that feeling?"

At the close of the voir dire, the trial court refused to excuse for cause some 12 members of the panel who were customers of Scott-New Madrid-Mississippi and Ozark Border. At least seven of the persons finally selected to serve were such customers.

During the trial, John W. Bailiff, identified then only as an employee of M & A (at the hearing on the condemnation he identified himself as right-of-way supervisor and assistant to the manager of M & A), was asked on cross-examination by appellants' counsel:

"Q. Who are the stockholders of M & A Electric Co-op?

"A. All of the users of REA power.

"Q. And that would be all of the folks that use power of Black River Co-op?

"A. Yes, sir.

"Q. All of the folks that use power from Scott-Mississippi-New Madrid?

"A. Yes, sir.

"Q. And then of course the other folks, that wouldn't be in Stoddard County. The Pemiscot and Dunklin County, they don't come up into Stoddard, do they? Let me state it another way.

"A. I think on the southern end they may come up into Stoddard County, the co-op. It is pretty close if they don't.

"Q. What about Black River, does it get down here and nick a small end of Stoddard County?

"A. No, Ozark Border has the western corner so Black River does not.

"Q. All right. So then if some one of these ladies up here are getting electricity from—through, say, Scott-Mississippi-New Madrid they are actually stockholders in M & A Electric Co-op?

"A. All users, yes, sir."

Appellants contend that the refusal to excuse for interest the customers of cooperatives served by M & A was error and further that the trial court should have ordered a mistrial based upon Bailiff's testimony which showed a disqualifying interest in such persons which deprived appellants of their right to an impartial jury.

Appellants' primary reliance on this issue is upon the case of Ozark Border Electric Cooperative v. Stacy, Mo.App., 348 S.W.2d 586. In that case the court held that a member of an electric cooperative organized under Chapter 394 has, as a matter of law, such a relationship to the cooperative as disqualifies him from serving as a juror in litigation to which the cooperative is a party because he is interested in the outcome of the litigation. The opinion anal-

ogizes the relationship between the cooperative and its members to that of a corporation and its stockholders.

In this case the relationship between the members of the "consumer" cooperatives and M & A is that the members owned the "consumer" cooperatives and the four "consumer" cooperatives in turn owned M & A. The respondent analogizes the situation to a holding company relationship and urges that Eickmann v. St. Louis Public Service Company, Mo., 323 S.W.2d 802, holds that the owner of stock in a parent corporation is not disqualified to serve on a jury involving a matter in which a subsidiary of the parent corporation has a pecuniary interest. In Eickmann, counsel for plaintiff sought to inquire whether members of the jury panel owned stock in National City Lines. According to plaintiff's counsel, National City Lines "owned a substantial part of the capital stock of the defendant St. Louis Public Service Company." In holding that the trial court did not err in refusing such an inquiry, the court stated (323 S.W.2d 807 [7–10]):

" * * * A person is not a competent juror who is not in a position to enter the jury box with an open mind free from bias and prejudice with respect to any party litigant and to decide the case upon the evidence adduced and the law as given in the court's instruction, and the fact that the statutes enumerate certain grounds of disqualification does not exclude other grounds. Section 494.190, RSMo 1949, V. A.M.S., Barb v. Farmers Insurance Exchange, Mo., 281 S.W.2d 297, 301[1]. However, the trial judge is and should be vested with broad discretion in determining the qualifications of veniremen to sit as jurors and his ruling should not be disturbed unless they are clearly and manifestly against the evidence. Strahl v. Turner, Mo., 310 S.W.2d 833, 841 [12]. Obviously the proper qualification of jurors is not served by unlimited inquiries into the stock ownership of affiliated or holding companies. The trial court must necessarily be vested with discretion as to when the in-

quiry is too remote or otherwise improper. The plaintiff has not demonstrated that he was prejudiced by the ruling and we are constrained to hold that the trial court did not abuse his discretion in limiting the inquiry."

On the other hand, in Bower v. Hog Builders, Inc., Mo.Sup., 461 S.W.2d 784, 802 [10], plaintiff's counsel was permitted to inform the jury:

"'Hog Builders, Inc., which I have indicated, is a Missouri Corporation, is wholly owned by the Nebraska Consolidated Mills of Omaha, Nebraska. That Nebraska Corporation also owns the Nixon Feeds which is a distributor of feeds for livestock and does business in this area.' "

In holding that there was no error in this statement and inquiry of prospective jurors as to their interest in the three corporations, the court stated (461 S.W.2d 802 [11]):

" * * * Certainly the plaintiffs were entitled to inquire as to any interest of prospective jurors in the parent and affiliated companies which obviously had an interest in the outcome of the case, and certainly the panel was entitled to know, as a basis for disclosing interest, the relationships of the companies. 'A stockholder in a corporation which owns stock in another company is disqualified to act as juror in an action against the latter company.' 47 Am.Jur.2d Jury, § 325, p. 896."

The Am.Jur.2d statement, quoted with approval in Bower, supra, cites McLaughlin v. Louisville Electric Light Co., 100 Ky. 173, 37 S.W. 851. In that case the court stated that a juror who owned stock in the Louisville Gas Company which owned all of the stock of defendant "had a disqualifying interest in the action, and should have been excused for cause," 37 S.W. 855.

In Texas Power & Light Company v. Adams, Tex.Civ.App., 404 S.W.2d 930, 943 [8, 9], the court held that the trial court did not err in disqualifying a prospective juror in a condemnation action for the reason that he owned stock in Texas Utilities, a corporation which owned all of the stock of the condemning utility. In that case the court said (404 S.W.2d 943 [7]): "On voir dire examination of Lowe, it was shown that he owned stock in Texas Utilities, which is a holding company and holds all of the stock for Texas Power & Light Company, the plaintiff in this case, *which the effect of is that he owns stock in the Texas Power & Light Company.*" While the technical legal exactness of the italicized portion may be questioned on the grounds that it ignores the separate corporate entity of the parent company, that such conclusion would represent a popularly accepted view is shown by the testimony of Bailiff that the stockholders of M & A were the persons who use REA power supplied by the "consumer" cooperatives.

Given the premise of the Stacy case that members of the "consumer" cooperatives occupy the same relationship to the corporation as stockholders to an ordinary business corporation, and that such relationship gives rise to interest disqualifying the members to serve as jurors in litigation to which the cooperative is a party, the interest of such members in a subsidiary corporation or cooperative, organized and operated ultimately for the benefit of such members is likewise disqualifying insofar as their serving as jurors in litigation involving such subsidiary is concerned. Such members in this case had a direct interest of a proprietary nature in M & A's acquisition of a right of way for an electric line.

This conclusion is not contrary to the conclusion reached in the Eickmann case. There the error was claimed to be in the refusal to permit inquiry about stockholding in a parent corporation. There was no showing that any jurors were stockholders in the parent corporation so plaintiff could demonstrate no prejudice by the refusal to permit the inquiry. Here the interest was a known and obvious one and the error is not based upon the refusal to permit in-

quiry but upon the fact that interested persons were permitted to serve on the jury.

As in the Stacy case, the fact that the members, when interrogated, denied that they would be prejudiced by reason of such interest is not conclusive. There the court stated (348 S.W.2d 591):

" * * * For, veniremen are not to determine their own qualifications [Moore v. Middlewest Freightways, supra, Mo., 266 S.W.2d 578 loc. cit. 586(12); Piehler v. Kansas City Public Service Co., supra, 357 Mo. 866, 211 S.W.2d 459 loc. cit. 463(5)], and we remain mindful of the eternal verity that, whatever else may change in this changing world, the impelling self-interest, motivating emotions and besetting frailties of members of the human family abide unchanged."

The case of Kendall v. Prudential Insurance Company of America, Mo.Sup., 327 S.W.2d 174, is not here controlling. That case held that holders of insurance policies in a mutual insurance company were not disqualified to serve as jurors in litigation against the insurance company where it was not shown what kind of policies the jurors held, whether or not they were assessable, and whether the jurors were entitled to dividends on their policies or even paid premiums. The absence of any such showing left too remote and speculative the possibility that the jurors had an interest in the outcome of the litigation. Here the interest arises by reason of the legal relationship of the jurors and the condemnor and is disqualifying.

Because of the failure to disqualify for cause members of the electric cooperatives served by M & A, the case must be remanded for a new trial. One other question urged on the present appeal merits attention.

 Appellants contend that the trial court erred in submitting the case to the jury under MAI 9.02. They urge that the instruction should have been modified, as shown in "Illustrations" under MAI 35.10.

In MAI 35.10, 9.02 is modified to show that the property taken was an underground easement for a pipe line. Such modification is not required for the easement here sought. See State ex rel. Kansas City Power & Light Co. v. Campbell, Mo.App., 433 S.W.2d 606.

Reversed and remanded.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

HOLMAN, P. J., SEILER, J., and FINCH, Alternate Judge, concur.

BARDGETT, J., not sitting.