**The CITY OF BLUE SPRINGS, MISSOURI, Appellant,**

v.

**CENTRAL DEVELOPMENT ASSOCIATION, et al., Respondent.**

**No. WD 34848.**

Missouri Court of Appeals, Western District.

Nov. 13, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Dec. 26, 1984.

Application to Transfer Denied Feb. 26, 1985.

Tom J. Helms, Kansas City (Collet, Borich & Helms and Russell D. Jacobson, Kansas City, of counsel), Robert H. Markey, Edwards & Markey, Blue Springs, for appellant.

Thomas H. Bennett, Reorganized Church of Jesus Christ of Latter Day Saints, Independence, Dick H. Woods, Michael W. Lerner, Stephen J. Owens, Stinson, Mag & Fizzell, Kansas City, for respondent Central Development Ass'n.

William A. Piedimonte, Piedimonte & Piedimonte, P.C., Independence, for respondent Community Water Co., Inc.

C. William Kramer, Cochran, Kramer, Kapke & Willerth, Independence, for respondent Atherton Levee Dist.

Before CLARK, P.J., and NUGENT and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

The City of Blue Springs, a fourth class city, appeals from the trial court's dismissal of its petition to condemn land owned by respondents, Central Development Association (CDA), Community Water Company (CWC), and the Atherton Levee District (ALD), for the purpose of constructing a municipally owned water system. Blue Springs claimed that in 1979 the Missouri Water Company informed them that it would not renew its 20-year contract to supply water to the city. This contract, from which came the entire supply of city water expires December 6, 1990. After instituting a study of the current situation, future water needs, and several alternative sources, Blue Springs decided on a water source in the Atherton Bottoms, on land in question near the Missouri River which has substantial subsurface aquifer (underground river or reservoir). In essence the city sought to sink wells and extract water from the underground supply and build a treatment plant near the wells. Easements also were to be obtained to drain off the waste from the treatment plant and to pipe the water to the city.

CDA is the real estate title holding corporation for the Reorganized Church of Latter Day Saints (RLDS) and owning 6,000 acres in the Atherton Bottoms, it was the principal entity concerned in the Blue Springs plan. CWC is a corporation which acquired the subsurface water rights to the CDA land and that of some surrounding neighbors. The president of CDA's farm division was named as the president of CWC. CDA has farmed the land for years and has irrigated those lands from the aquifer. ALD is a Missouri statutory public service corporation whose purpose, since 1923, has been to reclaim land in the Atherton Bottoms and protect it from flooding and erosion from the Missouri River.

The following events are not in dispute:

March 18, 1981 Blue Springs first contacted CDA (35 contacts followed over the next 16 months)

March 25, 1981 Blue Springs made only contact with ALD

June 2, 1981 Voters passed a nineteen million dollar bond issue to build the water plant

May 3, 1982 The ordinance in question was filed

May 10, 1982 CWC incorporated

May 17, 1982 Blue Springs passed ordinance declaring a public necessity for the acquisition of land and construction of a water treatment plant on the land in question

June 16, 1982 Blue Springs attorney offered CDA $132,200 for the land (about 60 acres)

June 30, 1982 CWC obtained subsurface water rights from CDA

July 12, 1982 Blue Springs ratified the offer to CDA by resolution

August 6, 1982 Blue Springs filed condemnation petition, defendants were CDA, CWC and ALD

Following three days of receiving evidence on the motion, the trial court said in its order the motion to dismiss was sustained on points 8, 9 and 10 of the Joint Suggestions in Support submitted by CDA, CWC and ALD:

8. Any negotiations held with Defendant CDA were not in good faith.

9. Plaintiff is precluded from condemning the water it seeks because the property is devoted to a public use by the Water Company. (*i.e.* CWC)

10. Plaintiff is precluded from condemning the rights it seeks in the Levee District's property because that property is already devoted to a public use.

Included with the order, was the trial court's three page memorandum which elaborated on its reasons for sustaining the motion to dismiss. These additional reasons elaborated on in the memo, though not included in the formal order are as follows: First, it said Blue Springs' public use is not superior to the respondents', and that the proposed use of the land as a water treatment plant would totally destroy or materially impair CDA's and CWC's use. Secondly, the trial court said that because the sole purpose of the condemned land was for water extraction, the negotiations should have included a reference to the subsurface water's value. Blue Springs' "token offer" implied that they "may have negotiated in less than good faith with those Defendants." Lastly, the trial court refers to "the numerous undisputed technical deficiencies in Plaintiff's petition" as another reason for dismissing the petition.

The memorandum contains several matters on which the court appeared to rely that were not directly or indirectly included within the three specific grounds on which the motion was granted.

The scope of review in this case is under *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Under that review the standards of no substantial evidence, being against the weight of the evidence and erroneous application of the law are here applicable to the judgment entered. *City of Cape Girardeau v. Robertson,* 615 S.W.2d 526, 530 (Mo.App.1981).

As a preliminary matter, there is no dispute the appellant Blue Springs has authority to condemn private property for public use pursuant to § 88.667 and § 79.-380 RSMo 1978. Nor is there a dispute that the building of a water treatment plant is indeed a public use. The respondents argue (albeit in their statement of facts and not as a point relied on) that Blue Springs has shown no true *necessity* for this plant, that the projections for daily water consumption were overestimated, that the choice of another area would be more economical, and the true purpose for the condemnation was for Blue Springs to make a profit. These arguments are not really germane to this appeal and the specific reasons for dismissal of the condemnation petition. (Failure to negotiate in good faith, and two of the parties being prior public utilities.) However, the question of whether a taking of any given private property is "necessary" for the condemnor's purpose and the extent and exact location of the property to be taken are matters for political or legislative determination. *Mapco, Inc. v. Williams,* 581 S.W.2d 402 (Mo. App.1979). As the Missouri Supreme Court held in *In the Matter of Proceedings to Grade, etc.,* 270 S.W.2d 863, 868 (Mo. 1954), "the legislative body of the municipality, in the exercise of its powers in matters of the kind here involved, is vested with a discretion not subject to review by the courts, unless it is affirmatively shown to have been exercised arbitrarily, fraudulently, or oppressively." *Parking Systems Inc. v. Kansas City Downtown Redevelopment Corp.,* 518 S.W.2d 11 (Mo.1974). Whether the city could have sought water elsewhere as opposed to the condemnation of this land and construction of a well and a water works is not a part of this appeal.

Although alluded to in the briefs and the order, the issue of necessity and the choice as to filling of those water needs of the city are not relevant in this case.

## TECHNICAL DEFICIENCIES ERROR IN LEGAL DESCRIPTION

■ This court will first address the last point raised in the memorandum. As indicated earlier, the trial court's order was accompanied by a memo which set out additional reasons for dismissal, including "numerous undisputed technical deficiencies" in the petition. The "deficiencies" must mean an incorrect legal description of the land both in the ordinance and in the petition. In particular, CDA's real estate was listed as being part of Township 50, when it should have been 51. The Missouri Supreme Court said in *State v. Allison*, 365 S.W.2d 563, 565 (Mo. banc 1963), that errors in description or a change in plan in a condemnation petition may be taken care of adequately by amendment. *See also Jackson County v. Hall*, 558 S.W.2d 791, 793 (Mo.App.1977), where this court held it was an abuse of the trial court's discretion not to permit condemnor to amend its petition on day of trial. Respondents argue that the 1932 appellate decision of *Sassman v. State Highway Commission*, 45 S.W.2d 1093 (Mo.App.1932), controls this case. But in *Sassman* the error in the legal description was not raised until *after* the condemnation proceedings were complete and the condemnee had been paid money for the wrong piece of land. Even the *Allison* court agrees that after a commissioners' report has been filed, amendments will generally not be permitted which would include different lands and which would prejudice the rights of the condemnee, or substantially change the issues. 365 S.W.2d at 565. Likewise, in *State ex rel State Highway Commission v. Spell*, 665 S.W.2d 650, 652 (Mo.App.1984), a motion to amend a property's description after the commissioner's report was filed and the proceedings concluded, was found untimely. In the present case the proceedings have not progressed past the petition stage. No commissioner's report has been

filed, let alone a final determination of value. Therefore, the amendments, which would be so minor so as not to be a substantial change, will not prejudice the rights of the defendants, so a motion to amend would be timely. Despite the error, all concerned appeared to know exactly where the wells would be sunk and the waterworks built.

Respondents also argue that apart from amending the petition, the Blue Springs' ordinance has the same defect in the legal description. This too can be corrected by amendment as the Missouri Supreme Court held in *City of St. Louis v. Senter Commission Co.*, 84 S.W.2d 133, 141 (Mo.1935). There the ordinance was amended by repealing the original section describing the property and enacting a new section with the correct description. In the Blue Springs' petition and ordinance the township number was incorrectly given for two of the six tracts. There is no claim that the rest of the metes and bounds given are not correct, so a change of this one number would not amount to a substantial alteration.

## GOOD FAITH NEGOTIATIONS BY BLUE SPRINGS

■ In *State ex rel Weatherby Advertising Company v. Conley*, 527 S.W.2d 334, 336 (Mo. banc 1975), it was held to be a jurisdictional requirement that the condemnor and property owner have been unable to agree on the compensation to be paid for the property being taken. This jurisdictional fact must be both pleaded and proved. Contrary to the trial court's findings, there is substantial evidence to support that Blue Springs accomplished both.

The fee owner of the property here involved is CDA. According to the court in *State ex rel State Highway Commission v. Pinkley*, 474 S.W.2d 46, 49 (Mo.App.1971) (cited with approval by the Missouri Supreme Court in *Conley, supra*), to satisfy the statutory requirements of § 523.010 RSMo the condemnors' evidence must show that a valid offer was made by one party,

usually the condemnor, and rejected by the other. The record on appeal includes evidence that on June 16, 1982 Blue Springs unconditionally offered $132,200 to CDA for the six tracts of land. Then on July 12, 1982 CDA rejected this offer. Unlike the *Pinkley* case where the State Highway Commission had not even approved the conditional offers, Blue Springs' offer was authorized as passage of the ordinance proved.

■ The trial court said in its memo that lack of good faith negotiations was indicated by Blue Springs' "token offer." Nowhere in respondents' brief or the trial court's order is stated what amount of money would have created a bona fide offer. Missouri case law indicates the relationship between the offer and the market value of the property to be condemned is not significant in the determination of good faith. An offer need not be a particular amount—merely sufficient to create a binding contract. *See Note,* Preliminary Requirements for Condemnation in Missouri: Necessity, Public Use, and Good Faith Negotiations, 44 Mo.L.Rev. 503, 511 (1979).

In *School District of Clayton v. Kelsey,* 196 S.W.2d 860 (Mo.1946), an offer of $15,-000 met the good faith negotiations requirement even though the actual damages were later assessed at $34,500. In *Shelby County R–IV School District v. Herman,* 392 S.W.2d 609 (Mo.1965), the State Highway Commission refused to offer any cash payment because the proposed highway improvements supposedly created benefits that exceeded the land owner's damages. The jury verdict resulted in a $150 award for 2.83 acres, but the court upheld the ruling that the attempt to negotiate was sufficient to comply with the requirement. It was there noted the negotiations must precede the filing of the petition. Thus, in the present case if the $132,200 offer, which was based on an appraisal, turns out to be only half or one-fifth the value finally awarded, that by itself is no indication of bad faith.

The trial court's memo also suggests that Blue Springs' offer was not in good

faith because it failed to include a reference to the subsurface water value. Had Blue Springs been hiding its purpose of using the land for wells and a water treatment plant, this fact may have had some merit. But here from the very start CDA knew of Blue Springs' intentions. This court believes there would be no magic in Blue Springs having said the $132,200 was for *both* the fee and the subsurface water. Clearly CDA's main complaint is the dollar amount offered, not the language of the offer. As discussed above, even if after the commissioner's report, and a jury verdict, the value of the land plus water is set at a higher price, this would not defeat the jurisdiction of Blue Springs' petition.

A final aspect of the good faith negotiations issue is Blue Springs' failure to negotiate with CWC. Whether Missouri allows subsurface water rights to be separated from the fee, or whether CWC owns a compensable interest in the condemned property need not be addressed for determination of this issue. The question here is whether Blue Springs had a legal obligation to acquire anything but CDA's fee interest. Analogous situations occured in two Missouri Supreme Court cases. In *Western Robidoux Printing & Lithographing Co., Inc. v. Missouri State Highway Commission,* 498 S.W.2d 745 (Mo. 1973), the plaintiff/appellant was a lessee on the condemned property, and argued a lack of good faith negotiations because the Highway Commission failed to acquire their leasehold interest. The court held that the compensation to be paid is ascertained as though the property belonged to one person, and then the sum is apportioned between the lessee and lessor. There was nothing improper for the Highway Commission to only negotiate with the owner of the fee.

In *M & A Electric Power Cooperative v. Georger,* 480 S.W.2d 868, 870 (Mo.1972), the condemned land was held in tenancy by the entirety. The condemnor only negotiated with the husband, but the court held that the flat refusal of one party made it unnecessary to tender an offer to the other

party, and that the evidence was sufficient to show the inability of the parties to agree upon the compensation to be paid.

In Blue Springs' situation it was clear that the fee owner, CDA, could not agree on the price to be paid for the six tracts of land. It was unnecessary for Blue Springs to decide how much should be offered for each subsidiary interest. Therefore, Blue Springs did not show a lack of good faith for failing to negotiate with anyone but the fee owner.

Under all the facts here it would be unfair to allow the fee owner, after the intent to condemn for a water supply had been expressed, to then deed to a companion entity the subsurface water rights and then hold the failure of the municipality to negotiate with this entity to be a jurisdictional flaw that defeated the whole petition.

The issue here only deals with negotiations measuring up to good faith to supply jurisdiction. Cases involving who should be made parties or who can file exceptions or actual apportionment of damages between title holder's and those owning mineral rights do not appertain. Also inapplicable as authority on the issues here is *Higday v. Nickolaus,* 469 S.W.2d 859 (Mo. App.1971) where the city had not even commenced condemnation.

### EXISTING PUBLIC USE

■ The final issue concerns the trial court's finding that both CWC's and ALD's use of land fall within the protection of the rule that property already devoted to a public use cannot be taken for another public use which will totally destroy or materially impair or interfere with the former use. *State v. Hoester,* 362 S.W.2d 519, 522 (Mo. banc 1962), *citing* 29 C.J.S. Eminent Domain 861.

■ There was no substantial evidence here as to a present public use by CWC. The trial court's memo admits that CWC does not "reach the point where they are under a present legal obligation to maintain a public purpose." As stated in 1 Nichols on Eminent Domain 3rd Ed. § 2.2(5), a mere voluntary assumption of public service which may be abandoned at any time carries with it no such privilege of exemption from condemnation. There is some controversy over what acts subordinates rights—the introduction of Blue Springs' ordinance, or the filing of the condemnation petition, but that need not be addressed to resolve this issue. At best CWC had incorporated under § 393.010 RSMo 1978, a week prior to the ordinance being passed and about 3 months before the petition was filed, and had timely obtained legitimate deeds to the subsurface water rights, but it simply had not done enough to become a protected entity.

As to the trial court's ruling CWC had already devoted the property to a public use, the memorandum itself contradicts the order. Such memorandum language that CDA and CWC, "have undertaken certain substantial steps toward a long range plan ...;" that CWC was "cut off at the pass" by the city's condemnation action, undercuts the sustaining of the motion which stated the "property is devoted to a public use by the water company."

■ The evidence was CWC had made a proposal to a water supply district, and as CWC's letter of October 12, 1982 to the Public Service Commission stated, the proposal was with the "intent" to enter into a contract in 1983, contingent on an agreement on price. The contract was blank as to amount of water to be supplied and price. The order of the commission recited CWC, "proposed to render service to the public." The commission further noted § 393.170 RSMo which requires application by the company to obtain a certificate of public convenience and necessity to dispense water to the public. As of June 1982 when CWC sought to issue stock, and July 19, 1982 when that attempt was denied because of no certificate, CWC could not dispense water to the public. CWC had no means to either mine or treat water from the aquifer. Presumably the attempt to sell stock was to raise money for that purpose. The requirements, which CWC had

not met, for an applicant to construct a facility and to be granted a service area are contained in 4 CSR 24–2.060. As of October 12, 1982 when the blank proposed contract was submitted by CWC to the commission, it had neither the power nor the duty to supply water on a public basis. The granting of a certificate of convenience and necessity is a mandate of the utility's duty to serve all persons in the franchise area it has undertaken to serve. *State ex rel Harline v. Public Service Commission of Missouri*, 343 S.W.2d 177, 182 (Mo.App. 1960). The timing and the attempts to obtain such authority (that was never obtained) makes certain CWC had no pre-existing public duty. Nothing was in place, or even close to being put in place when the city passed the ordinances to obtain a water supply.

■ A municipality's general statutory right to condemn cannot be escaped by anything short of an *existing* public use, and those facts are simply not present in this case.

■ Even if this court assumed CWC had established a prior public use, there are exceptions to the rule of exemption. In *Illinois Cities Water Company v. City of Mt. Vernon*, 11 Ill.2d 547, 144 N.E.2d 729, 733 (1957), the Illinois Supreme Court held that a municipality *can* acquire the property of an existing public utility devoted to the same use as that contemplated by the condemnor, by eminent domain. Relying on authority from earlier New York and Washington cases, the rationale for this result is that "while the purpose of the water works company was public in its nature, it cannot be said to be strictly identical with the municipal purpose. A municipal corporation is a public and governmental agency. It held property for the general benefit, with a larger scope of use." *Id.* Thus, in any event, there is no authority to support the trial court's contention that CWC's actions created a "superior" public use to that of Blue Springs.

■ There is no quarrel as to the trial court's specific order that ALD's property was within the domain of public use. Thus, the trial court's ruling on point 10 of respondent's motion to dismiss will be affirmed. Blue Springs practically concedes this point—the levee district is and has been in operation under the laws of this state. The net result is Blue Springs cannot condemn any of ALD's property. But the inability of Blue Springs to condemn ALD's land does not affect the city's ability to condemn the interests of CDA and CWC. The city's problem of disposal, with or without ALD is not such as to now dismiss the city's petition. A case from the Supreme Court of Colorado aptly describes this situation:

> The fact that petitioner has not complied with the law in this respect … may affect the ability of petitioner to enjoy the lands sought to be condemned, but does not effect its power to condemn such lands as against the respondents. They cannot raise a question which does not concern them, or which rests solely between the petitioner and the government.

*Denver Power & Irrigation Co. v. Denver & R.G.R. Co. et al.*, 30 Colo. 204, 69 P. 568, 570 (1902).

The other grounds mentioned in the motion but not sustained included; failure to mention water or the owner of the water in the ordinance, failure to negotiate with CDA or CWC prior to filing the petition, no statutory authority for the condemnation, and failure to comply with federal law. The trial court was correct in not sustaining a dismissal on these grounds.

The trial court's judgment as to dismissal on point 8 for failure to negotiate in good faith is reversed as being against the weight of the evidence and as a result of a firm belief that holding is clearly wrong. The judgment relating to point 9, CWC's being a prior public utility or entity, is reversed because it is not supported by any substantial evidence. The judgment on ALD's prior public use, point 10, is affirmed. If the judgment of dismissal as to CDA and CWC was predicated upon technical infirmities it was error—the cause is

remanded to allow Blue Springs to amend the ordinance and petition to accurately describe the land to be condemned and to then proceed against CDA and CWC. Costs to be assessed equally against Blue Springs, CDA and CWC.

All concur.