STATE of Missouri, ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Relator,

v.

Honorable William H. PINNELL, Circuit Court Judge of Lawrence County, Missouri, Respondent.

No. 16299.

Missouri Court of Appeals, Southern District, Division Two.

July 24, 1989.

---

**6.** Footnote 2, *supra.*

Judy L. Curran, Dist. Counsel, Kansas City, Rich Tiemeyer, Chief Counsel, Jefferson City, for relator.

Robert S. Wiley, Crane, for respondent.

PREWITT, Judge.

Relator sought, in the underlying action, to condemn property owned by Lloyd A. Garoutte and Alice M. Garoutte. Following the initial hearing on relator's condemnation petition, respondent stated that he would dismiss the petition for relator's failure to show good faith negotiations to purchase the property, but would stay the order for fifteen days if relator wanted to seek prohibition or mandamus.

Within that time relator filed a petition seeking this court's order prohibiting respondent from dismissing the condemnation petition and issuing a writ of mandamus directing respondent to order the condemnation of the property and to appoint commissioners to assess damages to the Garouttes. Thereupon this court issued its preliminary order prohibiting respondent from dismissing the action.

The parties agree that the condemnation petition should allege and relator must show that bona fide negotiation occurred and the parties were unable to arrive at a purchase price. See *State ex rel. Weatherby Advertising v. Conley*, 527 S.W.2d 334, 336–337 (Mo. banc 1975); *State ex rel. State Highway Commission v. Pinkley*, 474 S.W.2d 46, 49 (Mo.App.1971). We view the petition as sufficient to so allege and it is not seriously challenged. The question is whether the evidence showed sufficient negotiation with the Garouttes.

The evidence on negotiation came from the testimony of Dick Walker and a letter identified as Exhibit B referred to in that testimony. Mr. Walker is a "right of way negotiator" employed by relator. His testimony regarding negotiations follows:

DIRECT EXAMINATION BY MS. CURRAN:

\* \* \* \* \* \*

Q. You did attempt to negotiate with the defendants,—

A. Yes.

Q. —Lloyd and Alice Garoutte?

A. Yes.

Q. And looking at Exhibit B, will you tell us what that is?

A. This is our letter offer trying to purchase the property from the defendants, the Garouttes.

Q. And what parcel is involved—

A. Eleven—

Q. —here?

A. B.

Q. That is 11–B? Is that correct?

A. That is correct.

Q. And who is the owner of that land?

A. Lloyd A. and Alice M. Garoutte.

Q. Was Exhibit B presented to Lloyd A. and Alice M. Garoutte?

A. Yes.

Q. How was that done?

A. I handed the letter to them.

Q. To both of them?

A. Yes. They were both there at the time.

Q. Were you able to agree with them on a price—

A. No.

Q. —for the property involved?

A. No.

\* \* \* \* \* \*

CROSS EXAMINATION BY MR. WILEY:

\* \* \* \* \* \*

Q. Were you familiar with and involved in the appraisal of the property?

A. No, I wasn't involved in it.

Q. You did not do any of the appraising yourself then, I take it.

A. No, sir.

Q. But, I take it as negotiator that you had access to the appraisal. Is that—

A. I—

Q. —correct?

A. I get a Form 6. The appraisal is reviewed out of the Joplin office and it is sent to Jefferson City and then I get back a Form 6, which is what I am supposed to offer the property owners.

Q. And you made that offer to the property owners in this case?

A. Yes, and it's in Exhibit B here.

\* \* \* \* \* \*

THE COURT: Well, let me see if I understand you correctly. Mr. Wilson or Mr. Walker, you handed this letter to Mr. and Mrs. Garoutte.

WITNESS: Yes, sir.

THE COURT: And what response, if any, was there to that letter? What did they say, if anything?

WITNESS: As I recall, they said, "That's not enough and we expected at least Fifteen Hundred Dollars." Is that right, Lloyd?

MR. LLOYD GAROUTTE: Well,—

WITNESS: You said you thought the offer would be Fifteen Hundred Dollars, didn't you?

MR. WILEY: I would like for the witness to testify without asking my client to testify at this time.

THE COURT: Yes. Now, the offer as contained in this letter under date of January 26, 1989, which has been penned in, you handed that letter to the Garouttes?

WITNESS: Yes, sir, I did.

THE COURT: And they did not think that was a sufficient amount of money, without going into any details, is that—

WITNESS: Yes.

THE COURT: —correct?

WITNESS: Yes, sir.

THE COURT: Did they make you a counter offer?

WITNESS: No. They said they expected me to offer more than that, and then I believe that same day they contacted their attorney, Mr. Wiley, and he immediately wrote a letter and at that time said that he did not think that was enough money, and I believe he did put in an amount he thought they were damaged.

Respondent contends that the letter described as Exhibit B in Walker's testimony was not a sufficient offer because it does not describe the real estate and easements to be taken by the state. To support this position respondent quotes from *State ex rel. Missouri Highway and Transportation Commission v. Black*, 702 S.W.2d 525, 526 (Mo.App.1985):

> The letter contained no legal description of the property to be taken, and no description of the temporary construction easements sought. It did refer to a project number and a parcel number. In view of these omissions and other provisions normally found in a sale contract it is at least questionable that the letter contained an offer sufficiently definite to constitute a contract upon acceptance by the landowner.

After the portion quoted by respondent the paragraph closes with the court saying that it "need not reach that point."

The letter, in evidence here as Exhibit B, is set out below.[1] It refers to a deed which

---

1.                    1-26-89

RIGHT-OF-WAY: Lawrence County
    Route 14
    Project J—7 SO 14 426
    Parcel: 11-B

Lloyd A. Garoutte and
Alice M. Garoutte
407 E. Odell
Marionville, Missouri 65705
Dear Mr. and Mrs. Garoutte:

may have been sufficiently incorporated to set forth the legal description, if that was necessary.[2] We do not, however, subscribe to the view that an offer must be made in writing sufficient to make a contract upon acceptance in order for it to reflect good faith negotiations. To carry respondent's argument to the extreme, under it if there was a written offer which upon acceptance in writing might make a valid contract, but it is rejected and then the parties proceed to discuss the purchase and make several oral offers and counteroffers, only the written offer would be valid and the rest of the discussion meaningless.

■ In condemnation matters and other purchases of real estate negotiations frequently take place without formal requirements that might satisfy the statute of frauds. Usually those negotiations are between lay persons. It would not be practical for each offer or counter offer to be in such form that it can, upon its acceptance, immediately become a binding enforceable agreement. Good faith negotiation may occur without the necessity of written offers or counter offers that upon acceptance could immediately be an enforceable contract.

■ Whether the letter would have been sufficient to constitute a binding contract had it been accepted, it, and the other dis-

cussions between the parties establish sufficient good faith negotiations that the petition should not have been dismissed.

■ To satisfy the requirements of § 523.010, RSMo 1986, the condemnors' evidence must show that a valid offer was made and rejected. *City of Blue Springs v. Central Development*, 684 S.W.2d 44, 48–49 (Mo.App.1984). The relationship between an offer and the value of the property to be condemned is not significant in the determination of good faith. *Id.* at 49. See also *State ex rel. Missouri Highway and Transportation Commission v. Anderson*, 735 S.W.2d 350, 353–354 (Mo. banc 1987); *City of Macon v. Blees, Still–Hildreth Building Preservation, Inc.*, 729 S.W.2d 234 (Mo.App.1987); *City of Thornton v. Farmers' Reservoir & Irrigation Co.*, 194 Colo. 526, 575 P.2d 382, 392 (1978) (lengthy or face-to-face negotiations not required; offer to purchase in good faith by letter and allowing the owner time to respond is sufficient); *Oxendine v. Public Service Co. of Indiana*, 423 N.E.2d 612, 620 (Ind.App.1980) (single offer may be sufficient to prove that condemning authority negotiated in good faith).

The respondent is ordered not to dismiss relator's petition because of the failure to negotiate in good faith, to enter an order condemning the property in question, and

---

The Missouri Highway and Transportation Commission has approved a program for the construction and improvement of the above-mentioned route and project. It will be necessary to acquire certain real property and rights to accomplish the proposed highway improvement as indicated on the engineering plans and more particularly described in a deed presented to you for consideration.

I am authorized by the Highway and Transportation Commission, and on behalf of the Highway and Transportation Commission hereby offer all interested parties who may have an interest in the real estate to be acquired the sum of *$1,000.00,* which has been estimated to be just compensation for such property and rights based upon the fair market value of the property. A summary of the amount set out above as just compensation is as follows:

Land and Minor Improvements $ 1,000.00

The estimate of just compensation has been arrived at after giving consideration to the sales prices of other properties in the area and which

are similar to your property, in accordance with the procedures explained in the brochure styled "When a Highway Comes Your Way".

It is requested that you, within a reasonable time, advise the Highway and Transportation Commission's representative or the undersigned of your acceptance or rejection of this offer. As explained in the brochure styled "When a Highway Comes Your Way" you may be entitled to reimbursement for a pro rata portion of current realty taxes paid. It is your responsibility to submit the attached Form 7–2.21(b) properly executed with copies of paid tax receipts to this office to claim reimbursement.

Very truly yours,
R.K. Stalcup
District Engineer
Attachments

**2.** "Attachments" were indicated at the bottom of the letter as being included with it, but we do not know if they were included or, if so, that a deed to the property was one of them.

to appoint the commissioners as provided by law.

FLANIGAN, P.J., and MAUS, J., concur.